Randy S. DOUGAN, Appellant/Cross–Appellee,

v.

AURORA ELECTRIC INC., Eagle Pacific Insurance, Alaska Workers' Compensation Board, Appellees/Cross–Appellants.

Nos. S–9937, S–9958.

Supreme Court of Alaska.

June 28, 2002.

Randy Dougan, pro se, Eagle River.

Joseph M. Cooper, Russell, Tesche, Wagg, Cooper & Gabbert, Anchorage for Appellees/Cross–Appellants.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Randy S. Dougan sustained work-related injuries during his employment with Aurora Electric. The Alaska Workers' Compensation Board heard and resolved his claims. Dougan appealed the board's decision to the superior court. Dougan now appeals the superior court's decisions that he was not entitled to penalties and interest on his award and that thirteen of his fifteen claims should be dismissed. Aurora cross-appeals the decision by the superior court that the board wrongly denied Dougan a compensation rate adjustment.

We affirm the denial of penalties and interest because substantial evidence supports that decision. We affirm dismissal of eleven of the claims because, although the court erred in dismissing them for inadequate briefing without giving the *pro se* litigant an opportunity to correct the briefing, the error was harmless in the circumstances of this case. We remand to the board the remaining two claims dismissed by the superior court for factual determinations. Finally, we reverse the decision remanding the compensation rate adjustment to the board for recomputation because the board's computation was proper under AS 23.30.220 as it has been amended.

## II. FACTS AND PROCEEDINGS

### A. Facts

Randy Dougan sustained an injury to his lower back on November 1, 1996 while working as an electrician for Aurora Electric.[1] Dougan saw Dr. Edward M. Voke for this back injury a few days later. The doctor diagnosed Dougan with acute lumbosacral facet syndrome, an inflammation of the articulations between the vertebrae. Dougan was placed on temporary disability beginning on November 5, 1996, throughout which time he was periodically paid either temporary total

---

1. The employer, Aurora Electric Inc., and its insurer, Eagle Pacific Insurance Group, will collectively be referred to as "Aurora" in this opinion.

disability (TTD) or temporary partial disability (TPD). Dougan's gross weekly earnings were calculated under AS 23.30.220(4)(A) using the thirteen weeks between July 27, 1996 and November 2, 1996.

Dr. Voke referred Dougan to Dr. Michael James on December 9, 1996 for a condition that Dr. Voke diagnosed as chronic low back pain. Dougan continued to be unable to work and received either TTD or TPD until January 8, 1997 when Dr. James stated that Dougan could return to light work, which was available to him. Benefits were suspended on January 9, 1997. However, on February 19, 1997, Dr. James reported that no light work had been available, resulting in Dougan not working during the previous month. That same day, Dr. James released Dougan to work as an electrician without limitation from that day forward. Although Dougan's benefits were suspended on January 9, 1997 when he was released to light duty, his inability to find such work resulted in the reinstatement of his benefits from January 31, 1997 to February 19, 1997. With Dr. James's release to full duty, though, Dougan's benefits were suspended starting February 20, 1997. Dougan eventually received benefits for January 9, 1997 through January 31, 1997 with penalties, due to Aurora's delay in payment.

Dr. James determined that Dougan was medically stable and could return to medium work on April 21, 1997. Because of Dr. James's finding of medical stability, benefits were reinstated for the time between the last suspension, February 20, 1997, to Dougan's date of stability, April 20, 1997. Benefits were then suspended on April 21, 1997. Eventually, Aurora paid benefits for the time between Dougan's first release to full duty and Dr. James's finding of medical stability, February 20, 1997 to April 20, 1997, with penalties. On April 29, 1997, Dr. James reported that Dougan had a Permanent Partial Impairment (PPI) rating of five percent and Aurora paid Dougan a lump sum pursuant to the PPI rating on May 13, 1997.

On June 20, 1997 Dr. Lee B. Silver examined Dougan for an Employer Medical Evaluation (EME) and concluded that Dougan was medically stable and could return to work as an electrician with no restrictions. Dr. Silver also concluded that Dougan had a PPI of zero percent and that he required no further medical treatment. On July 11, 1997 Aurora controverted all benefits due on the basis of Dr. James's April 29, 1997 report and Dr. Silver's June 24, 1997 report. Aurora eventually paid Dougan all benefits due to him.

In May 1997 Dougan stopped treatment with Dr. James and started treatment with Dr. Samuel H. Schurig. On June 13, 1997 Dr. Schurig stated that Dougan was medically stable; however, on June 24 he found that Dougan was not medically stable but that he could return to light work as it became available. On September 29, 1997, Dr. Schurig stated that Dougan was still medically unstable but was continuing to show improvement.

A second independent medical evaluation (SIME) was performed by Dr. Douglas G. Smith on January 23, 1998. Dr. Smith stated that, due to Dougan's objective improvement while under Dr. Schurig's care, a medical stability date of November 1, 1997 was justified. Aurora subsequently paid TTD benefits for April 21, 1997 through May 15, 1997 with interest and penalties and TTD benefits for May 16, 1997 through November 4, 1997 with interest. Aurora also paid all medical bills for treatment prior to the SIME report. Some of Dr. Schurig's bills were returned to his office because they were lacking information. Dr. Schurig's office resubmitted the bills with the requested information on June 11, 1998 and the bills were paid on June 23, 1998.

**B. Proceedings**

Dougan filed a petition with the Alaska Workers' Compensation Board in April 1997 making several allegations of misconduct against Aurora and its insurer in the handling of his claim. Dougan also requested "a PPI rating by Dr. Schurig, a compensation rate adjustment, and penalties and interest on TTD, PPI and medical benefits." In September 1997 Dougan filed an Application for Adjustment of Claim, requesting TTD benefits from April 21, 1997 on, with penalties, interest, medical costs, and transportation costs. Dougan alleged that Aurora unfairly and frivolously controverted his claims. In

addition to these petitions, Dougan filed several petitions alleging misconduct by Aurora, violations of the Alaska Workers' Compensation Act, and civil and criminal causes of action.

In May 1999 the board determined after oral argument that it did not have authority to adjudicate the civil, constitutional, or criminal claims. The board concluded that, in criminal matters, its authority was limited to referring matters to the proper authorities if a violation became apparent during the course of the proceedings. A second hearing was held on October 21, 1999 to determine the substantive workers' compensation issues of Dougan's claims. On the substantive issues, the board ruled that: (1) Dougan was not entitled to penalties for late-paid time-loss compensation, medical benefits and PPI benefits; (2) Dougan was not entitled to interest for late-paid time-loss compensation, medical benefits and PPI benefits; (3) Aurora did not unfairly or frivolously controvert Dougan's claims; (4) Dougan was not entitled to a compensation rate adjustment; (5) Dougan was not entitled to a PPI rating by Dr. Schurig—the board dismissed this issue without prejudice; (6) Dougan's request that the board refer allegations of misconduct to other agencies and authorities was denied.

Dougan appealed the board's order to the superior court, raising fifteen issues. The superior court held that Dougan abandoned thirteen of the issues because these issues were not adequately briefed or were not listed in the points on appeal. The two remaining issues were whether the board properly found that Dougan was not entitled to penalties and interest on late-paid benefits and whether the board properly denied Dougan a compensation rate adjustment. The superior court held that the board prop-

erly. denied interest and penalties to Dougan. The issue of whether a compensation rate adjustment was due was remanded for a determination under *Gilmore v. Alaska Workers' Compensation Board*[2] of whether Dougan's past employment history is an accurate predictor of losses due to injury.

Dougan appealed the superior court's ruling. Aurora filed a cross-appeal claiming that the superior court improperly ruled that the board erred in finding that no compensation rate adjustment was due.

## III. STANDARD OF REVIEW

When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the board's decision.[3] We review procedural decisions of the superior court under an abuse of discretion standard.[4] We will reverse a ruling for abuse of discretion only when, after reviewing the whole record, we are left with a definite and firm conviction that the superior court erred.[5]

Factual findings made by the board are reviewed under the "substantial evidence" standard.[6] Factual findings will be upheld so long as there is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[7] Discovery rulings are generally reviewed for abuse of discretion.[8]

In questions of law involving the agency's expertise, a rational basis standard will be applied and we will defer to the agency's determination as long as it is reasonable.[9] We will substitute our own judgment for questions of law that do not involve agency expertise.[10] Constitutional questions

2. 882 P.2d 922 (Alaska 1994).

3. *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000); *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

4. *Morgan v. State, Dep't of Revenue*, 813 P.2d 295, 297 n. 4 (Alaska 1991).

5. *Id.*

6. *DeYonge*, 1 P.3d at 94.

7. *Grove v. Alaska Constr. & Erectors*, 948 P.2d 454, 456 (Alaska 1997) (quoting *Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1046 (Alaska 1978)).

8. *Christensen v. NCH Corp.*, 956 P.2d 468, 473 (Alaska 1998).

9. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

10. *Id.* at 903.

are questions of law for which we will substitute our own judgment.[11] We will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." [12]

## IV. DISCUSSION

 There is a threshold issue: whether this claim is properly before this court. The superior court remanded the issue of whether Dougan was entitled to a compensation rate adjustment to the board. We have held that when a superior court acts as an intermediate appellate court and reverses and remands an agency ruling, the superior court's decision is not a final judgment.[13] Under the appellate rules, an appeal as a matter of right may not be maintained when no final order has been issued by the superior court.[14] However, we have the discretion to treat this as a petition for review pursuant to Appellate Rule 402.[15] We may review a non-final judgment when postponement of review will result in undue delay.[16] Because we find that both the board and the superior court applied a test that is superfluous and that remanding the issue back to the board will result in undue delay, we treat this appeal as a petition for review and grant the petition so as to reach the merits.

### A. The Superior Court Did Not Err in Finding that the Board Properly Denied Penalties and Interest.

 Dougan claims that the board erred in denying him penalties and interest on compensation payments controverted by Aurora. An employee is entitled to interest on compensation that is not paid when due.[17] An employee is also entitled to penalties on compensation due if compensation is not properly controverted by the employer.[18]

We have held that an employer must have evidence that would justify denial of a compensation award in order to make a good faith controversion.[19] Specifically, there must be "reliance by the insurer on responsible medical opinion or conflicting medical testimony." [20]

The board found that Aurora properly controverted all benefits on July 11, 1997 on the basis of Dr. James's report and Dr. Silver's report. The board also found that Aurora eventually agreed to the payment of compensation for the period of April 21, 1997 through November 4, 1997, but properly postponed payment until Dougan's employment activities for that period were confirmed. The board found that penalties and interest were properly paid and that neither further penalties nor further interest was due. The board found that Dr. Schurig's bills were paid within the requisite time after re-submission with the requested information. The superior court upheld the board's findings using the substantial evidence standard.

 Dougan also claims that the board failed to award penalties under AS 23.30.250. The board found that it was without jurisdiction to award penalties under this statute. Alaska Statute 23.30.250 provides that one who makes a false or misleading statement is "civilly liable to a person adversely affected by the conduct." [21] The "civilly liable" portion of AS 23.30.250(a) is in reality not a penalty provision but a legislative declaration that one who engages in certain specific conduct will be liable in a civil action to a person adversely affected by the conduct. Alaska Statute 23.30.250(a) implies that the civil action should be brought in court rather than

11. *Sonneman v. Knight,* 790 P.2d 702, 704 (Alaska 1990).

12. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

13. *City of North Pole v. Zabek,* 934 P.2d 1292, 1295 (Alaska 1997) (citing *City and Borough of Juneau v. Thibodeau,* 595 P.2d 626, 629 (Alaska 1979)).

14. *See* Alaska R.App. P. 202.

15. *Zabek,* 934 P.2d at 1296.

16. Alaska R.App. P. 402(b)(1).

17. 8 AAC 45.142.

18. AS 23.30.155.

19. *Harp v. ARCO Alaska, Inc.,* 831 P.2d 352, 358 (Alaska 1992).

20. *Id.* (internal quotations and citations omitted).

21. AS 23.30.250(a).

before the board both by the term "civilly liable" and by the conjunction of that term with the other provisions of subsection .250(a) which refer to criminal penalties which obviously must be adjudicated in court. This conclusion is bolstered by the fact that AS 23.30.250(b) expressly relates to remedies that the board can impose upon a finding that a claimant has made a false or misleading statement. Therefore the board did not err in denying Dougan a remedy for civil penalties under AS 23.30.250(a).

All interest payments due were paid by Aurora. Dougan offers no time period for which he claims he is specifically owed interest on compensation payments. According to the facts found by the board and stated above, compensation has been paid for the entire period that Dougan was injured, November 1, 1996 through November 4, 1997. Payments that were late due to controversion by Aurora for the periods of January 9, 1997 through January 30, 1997 and April 21, 1997 through November 4, 1997 have been paid with interest. Therefore, Dougan received the interest payments to which he was entitled.

The board had substantial evidence to find that Aurora controverted the claims in good faith and that Dougan is not owed penalties or interest.[22] Therefore, we uphold the decision of the superior court finding that the board properly denied penalties and interest.

## B. The Superior Court Erred in Dismissing Thirteen of Dougan's Fifteen Claims.

■■■ Dougan claims that the superior court improperly dismissed thirteen of his fifteen claims because his brief did not comply with the appellate rules. The superior court's decision offers very little explanation of the reasons for the dismissal. Only one concrete example of the briefing inadequacy was given for all thirteen claims. There is no indication that Dougan was given notice of the inadequacy and a chance to comply with the briefing requirements.

■■■ Under the appellate rules, the superior court could have given Dougan a chance to correct the brief.[23] We have held that the briefs of a *pro se* litigant are held to a less stringent standard than those of attorneys.[24] A judge must inform a *pro se* litigant "of the proper procedure for the action he or she is obviously attempting to accomplish." [25] Specifically, a judge must notify a *pro se* litigant of defects in his or her brief and give the party an opportunity to remedy those defects.[26] Here, before dismissing the claims, the superior court should have notified Dougan of the defects in his brief and given him leave to correct those defects. Since Dougan made a good faith effort to comply with briefing requirements, we find that the superior court erred in dismissing thirteen of his fifteen claims.

■■■ We have reviewed *de novo* the thirteen claims that were dismissed. We find that, no matter how restated, eleven of these claims are meritless and we dismiss them as having no basis in the law. These eleven claims include alleged violations of Dougan's right to privacy [27] and equal protection rights,[28] the board's refusal to refer various violations to other agencies,[29] Dougan's

22. For a further discussion of the Board's factual findings see Part IV.B., *infra*.

23. Alaska R.App. P. 212(c)(11).

24. *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987).

25. *Id.*

26. *See Bauman v. State, Div. of Family & Youth Servs.*, 768 P.2d 1097, 1099 (Alaska 1989) (indicating that judges must warn *pro se* litigants on aspects of procedure when the *pro se* litigant has filed a defective pleading).

27. Administrative agencies have no jurisdiction to decide issues of constitutional law such as a

violation of one's right to privacy. *See State, Dep't of Labor, Wage & Hour Div. v. Univ. of Alaska*, 664 P.2d 575, 580 (Alaska 1983).

28. Dougan failed to make a prima facie case of a violation of his equal protection rights because he failed to show that the board intended to discriminate against him based on an arbitrary and unjustifiable standard. *See Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.*, 991 P.2d 202, 210 (Alaska 1999).

29. There was substantial evidence to support the board's findings that Aurora did not commit criminal violations during the proceedings.

third-party immunity claim,[30] Dougan's claim regarding the exclusive remedy provision of the Act,[31] the board's finding that it was without jurisdiction to rule on Dougan's discrimination claim,[32] and denial of Dougan's claims that the board failed to issue its opinion within thirty days,[33] that his claim was heard by more than one panel,[34] and that Dougan was entitled to a second permanent partial impairment rating.[35] However, we find that two of his fifteen claims may proceed and we remand these claims to the board to make the appropriate findings.

■ First, Dougan's claim that his due process rights were violated by the board's failure to rule on his discovery requests requires hearing by the board. We have held that a fair and meaningful hearing, as required by due process, does require that the parties be given adequate access to information requested in discovery.[36] The record indicates that Dougan filed three discovery requests: one on December 3, 1998, a second on December 17, 1998, and the last on February 17, 1999. In addition to his discovery requests, Dougan also demanded that the board compel discovery in petitions filed on December 17, 1998 and April 5, 1999, as well as in an objection filed on February 18, 1999. At the pre-hearing conference on March 5, 1999, the discovery issues were discussed and the parties agreed to defer the questions regarding discovery until the issues concerning the board's jurisdiction to hear Dougan's criminal and civil claims against Aurora were decided. In the board's order ruling that the board did not have jurisdiction to hear the criminal and civil claims, the board stated that discovery would not be compelled be-

cause evidence related to these issues "is not relevant to a material issue at [the] hearing." In his petition for reconsideration, Dougan again asked the board to reconsider his discovery request because "the referenced petition to compel discovery dated 12/17/98 does include other relevant issues." Also, in an objection filed on June 7, 1999, Dougan stated that his discovery request filed on February 17, 1999 was still disputed by the parties and had not been resolved by the board. We find no indication that the board ever addressed Dougan's requests.

■ Second, Dougan alleges that the board failed to include the value of his employer-provided health benefits in his compensation rate. Dougan claims that he was entitled to this adjustment under 8 AAC 45.220, which includes health benefits as periodic payments that are taken into account in determining an employee's compensation rate.[37] In fact, the board has held that the statute "does not leave any discretion when calculating gross earnings" and that "health and life insurance benefits 'must be included as a periodic payment.' "[38] Dougan raised this issue to the board in an amendment to a petition and the issue was discussed in a pre-hearing conference on March 18, 1999. Therefore, we remand this issue back to the board for a determination of whether Dougan is entitled to a compensation rate adjustment based on the amount of his employer-provided health benefits.

## C. The Superior Court Erred in Remanding the Issue of a Compensation Rate Adjustment to the Board.

■ Aurora argues on cross-appeal that,

---

30. Claims of violations relating to construction project permitting and inspections are outside the jurisdiction of the board. See Univ. of Alaska, 664 P.2d at 580.

31. The exclusive remedy provision of the Act (AS 23.30.055) prevents an employee from bringing subsequent civil actions arising out of work-related injuries and the board is without jurisdiction to hear civil claims.

32. Claims made under AS 23.30.247 are required to brought in a private civil action. The board is without jurisdiction to decide such claims.

33. Dougan failed to offer any evidence as to how the board's late-filed decision prejudiced him.

34. Dougan failed to offer any evidence as to how he was prejudiced by his claim having been heard by more than one panel.

35. Since the board retained jurisdiction over this issue, there has been no final judgment and it is not properly before this court.

36. Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd., 991 P.2d 202, 211 (Alaska 1999).

37. 8 AAC 45.220(c)(3)(B).

38. Irvine v. K & L Distribs., AWCB No. 00–0023 (2000).

because AS 23.30.220(a)[39] has been amended, the case law that both the board and the superior court applied is no longer applicable. In *Gilmore v. Alaska Workers' Compensation Board*,[40] we found that application of a prior version of AS 23.30.220[41] was unconstitutional under the Equal Protection Clause.[42] The holding in *Gilmore* is largely based on the fact that wage determinations under the prior version of the statute based compensation rates exclusively on the average wage earned during a period of over a year without providing an alternate approach if the result was unfair.[43] The amended version of AS 23.30.220 corrects that problem by providing a variety of formulas for differing employment situations. The board correctly applied the new version of AS 23.30.220(a) when it initially calculated Dougan's compensation rate. The amended statute closely follows the model law cited in *Gilmore* as an example of a statute that would not violate the Equal Protection Clause.[44] The application of the test outlined by this court to deal with an unfair application of the statute is superfluous due to these amendments. Therefore, we reverse the superior court's remand of the compensation rate adjustment and hold that the *Gilmore* test is no longer necessary when the board's initial determination of compensation is based on the amended version of AS 23.20.220.

## V. CONCLUSION

Because substantial ·evidence supported the superior court's decision to deny penalties and interest, we AFFIRM the denial of penalties and interest. Because the superior court dismissed Dougan's claims without providing him an opportunity to provide adequate briefing, we hold that the superior court erred in dismissing those claims. But reviewing the thirteen claims *de novo*, we hold that eleven of the claims are without merit and therefore AFFIRM the superior court's dismissal of them as harmless error. As to the remaining two claims (alleged violation of Dougan's due process rights by failing to rule on his discovery requests and alleged error in the compensation rate adjustment based on employer-provided health benefits), we REVERSE the superior court's dismissal and REMAND the claims to the board for factual determinations. Finally, we REVERSE the superior court's decision applying the *Gilmore* standard to the amended

**39.** AS 23.30.220(a) states in pertinent part:

(a) Computation of compensation under this chapter shall be on the basis of an employee's spendable weekly wage at the time of injury. An employee's spendable weekly wage is the employee's gross weekly earnings minus payroll tax deductions. An employee's gross weekly earnings shall be calculated as follows:
(1) if at the time of injury the employee's earnings are calculated by the week, the weekly amount is the employee's gross weekly earnings;
(2) if at the time of injury the employee's earnings are calculated by the month, the employee's gross weekly earnings are the monthly earnings multiplied by 12 and divided by 52;
(3) if at the time of injury the employee's earnings are calculated by the year, the employee's gross weekly earnings are the yearly earnings divided by 52;
(4) if at the time of injury the
(A) employee's earnings are calculated by the day, hour, or by the output of the employee, the employee's gross weekly earnings are the employee's earnings most favorable to the employee computed by dividing by 13 the employee's earnings, including overtime or premium pay, earned during any period of 13 consecutive calendar weeks within the 52 weeks immediately preceding the injury.

**40.** 882 P.2d 922 (Alaska 1994).

**41.** AS 23.30.220(a) prior to the 1995 amendment stated in relevant part:

(a) The spendable weekly wage of an injured employee at the time of an injury is the basis for computing compensation. It is the employee's gross weekly earnings minus payroll tax deductions. The gross weekly earnings shall be calculated as follows:
(1) the gross weekly earnings are computed by dividing by 100 the gross earnings of the employee in the two calendar years immediately preceding the injury;
(2) if the employee was absent from the labor market for 18 months or more of the two calendar years preceding the injury, the board shall determine the employee's gross weekly earnings for calculating compensation by considering the nature of the employee's work and work history, but compensation may not exceed the employee's gross weekly earnings at the time of the injury.

**42.** *Gilmore*, 882 P.2d at 929.

**43.** *Id.* at 928–29.

**44.** *Id.* at 929 n. 15.

version of AS 23.30.220, because the *Gilmore* standard is not applicable to the revised statute; we reinstate the board's denial of a compensation rate adjustment.