**Jerry GUNTER, Appellant,**

v.

**KATHY-O-ESTATES, et al., Appellee.**

**No. S-10931.**

Supreme Court of Alaska.

March 19, 2004.

---

66

Jerry Gunter, pro se, Anchorage.

Allan E. Tesche, Russell, Tesche, Wagg, Cooper & Gabbert, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I.  INTRODUCTION

Jerry E. Gunter was permanently and totally disabled by a brain injury he suffered while working for Kathy–O–Estates. Gunter and Kathy–O–Estates entered a compromise and release agreement settling their dispute over Kathy–O–Estates's workers' compensation liability due to that injury. This case involves Gunter's attempt to overturn that agreement. The superior court appointed the Community Advocacy Project of Alaska, Inc. as Gunter's guardian/conservator and gave it the power, which the Community Advocacy Project then exercised, to dismiss Gunter's claims. Gunter also sought reimbursement for various costs related to his brain injury. These claims were denied by the Alaska Workers' Compensation Board and this denial was upheld by the superior court. We affirm the denial of Gunter's reimbursement claims because the Alaska Workers' Compensation Board correctly concluded that it lacked the authority to reimburse Gunter for the financial consequences of his work-related injury. We affirm the denial of Gunter's attempt to overturn the compromise and release because the superior court properly vested Gunter's guardian/conservator with the authority to dismiss the claim on Gunter's behalf.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

Jerry E. Gunter suffered a severe head injury in a traffic accident on April 4, 1988 while working for Kathy–O–Estates, his parents' business. He was permanently and totally disabled as a result of the accident. Kathy–O–Estates and its insurer, Fireman's Fund Insurance Company, were liable for benefits under the Alaska Workers' Compensation Act. The parties [1] agreed to settle the workers' compensation disputes stemming from the injury by entering into a partial Compromise and Release (C & R). The C & R provided that Gunter would be paid $175 per week for ten years and $200 per week after that. It was signed by both Gunter's guardian and his attorney, and was approved by the board on November 18, 1992.

### B.  Proceedings

Gunter filed a workers' compensation claim requesting that the board overturn the C &

---

1.  The Alaska Workers' Compensation Board was added as a party, but declined to participate because it has no independent interest in this case.

R in July 1998. The board originally refused to allow Gunter to proceed with his claim, ordering the Community Advocacy Project of Alaska, Inc. (CAPA) to seek a court-appointed guardian for Gunter. Gunter amended his complaint attempting to overturn the C & R in 1999 and added a number of claims against Kathy–O–Estates which have nothing to do with medical treatment, rehabilitation, or disability benefits. These claims included reimbursement for: a $500 fine imposed on him for disorderly conduct; the costs of court-ordered alcohol and drug testing and treatment; $500 in unpaid rent by one of his roommates; $10,000 for theft by a roommate; $4,000 for a stolen watch; and $6,000 for one-half of the value of his river boat. The board concluded that Gunter's claims were not compensable under the Alaska Workers' Compensation Act and, consequently, that it lacked authority to impose liability for them on Kathy–O–Estates. The board dismissed and denied all claims. Superior Court Judge Elaine M. Andrews affirmed the board's denial of Gunter's reimbursement claims in February 2002, citing as justification "the reasons stated in [the board's] decision, and based on the analysis contained in [Kathy–O–Estates's] brief."

The board's December 1999 opinion reaffirmed its earlier refusal to allow Gunter to proceed with his attempt to overturn the C & R unless he was represented by a court-appointed guardian or other competent representative. In September 2001, after an unsuccessful attempt to find counsel willing to represent Gunter, the superior court appointed CAPA as Gunter's guardian/conser-

vator. In January 2002 the superior court ordered the board to dismiss all of Gunter's pending claims, including his challenge to the C & R, upon the filing with the board of a stipulation by CAPA to dismiss Gunter's claims. CAPA filed such a stipulation and the board dismissed Gunter's pending claims.[2] Gunter, appearing *pro se*, appeals these decisions.[3]

## III. STANDARD OF REVIEW

■ We independently review the merits of an administrative board's decisions when the superior court is acting as an intermediate court of appeal in an administrative matter.[4]

■ We have established that "[i]n questions of law involving an agency's expertise, a rational basis standard will be applied and we will defer to the agency's jurisdiction as long as it is reasonable."[5] But we will use our independent judgment in reviewing questions of law that do not involve an agency's expertise.[6] In applying our independent judgment we will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[7]

■ We review the appointment of a limited guardian or conservator for abuse of discretion.[8] We review factual findings involved in determining whether a guardian or conservator should be appointed for clear error.[9] We decide today that we will review a ward's challenge to the dismissal of his or her legal claims by a guardian or conservator

2. *Gunter v. Kathy–O–Estates*, AWCB Decision No. 02–0054 (March 27, 2002).

3. The superior court also ordered the board not to accept any future claims, applications, or petitions by Gunter unless they were filed through Gunter's counsel or guardian/conservator. Gunter has not challenged this ruling.

4. *Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 793 (Alaska 2002).

5. *Id.*

6. *Id. But cf. Palmer v. Municipality of Anchorage, Police & Fire Ret. Bd.*, 65 P.3d 832, 837 n. 7 (Alaska 2003) (noting that "[e]ven under the in-

dependent judgment standard we '[g]ive some weight to what the agency has done, especially where the agency interpretation is longstanding.'" (quoting *Usibelli Coal Mine, Inc. v. State, Dep't of Natural Res.*, 921 P.2d 1134, 1142–43 (Alaska 1996))).

7. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

8. *See H.C.S. v. Cmty. Advocacy Project of Alaska, Inc.*, 42 P.3d 1093, 1096 (Alaska 2002). *But see In re S.H.*, 987 P.2d 735, 738–41 (Alaska 1999) (applying clearly erroneous standard to determine whether it was appropriate to appoint conservator).

9. *See In re S.H.*, 987 P.2d at 738–41.

by determining whether the ward presents a colorable legal claim.

## IV. DISCUSSION

### A. The Board Was Correct in Deciding that Gunter's Claims Seeking Reimbursement for a Court–Imposed Fine, Court–Ordered Alcohol Treatment and Testing, Theft, Unpaid Rent, an Interest in a Boat, and an Interest in Kathy–O–Estates Are Not Compensable.

■ Gunter claims that Kathy–O–Estates should reimburse him for a court-imposed fine for disorderly conduct, related court-ordered alcohol treatment and testing, rent that his roommates failed to pay, money and a gold watch allegedly stolen by his roommates, and a half-interest in a boat that he transferred to a mechanic because he was unable to maintain the boat on his own.[10] He contends that Kathy–O–Estates should be held liable for all of these costs because none of them would have been incurred if his brain had not been injured in his work-related accident; he states that "[m]y brain is broke in half from work. Therefore [Kathy–O–Estates] is responsible for everything that I do or what happen[s] to me." Specifically, he contends that he would not have been convicted of disorderly conduct and ordered to pay the associated fine and treatment costs if his brain had not been injured. He also reasons that if he had not been injured, he would not have been forced to live with roommates, and therefore would have been spared their alleged thefts.

The board found that it had to dismiss Gunter's claims because it lacked legal authority to award the relief he requested. It noted that it had no authority over Gunter's reimbursement claims because "claims for expenses for court-ordered alcohol abuse counseling, rent owed due from a former roommate, thefts and damage by another roommate, alcohol and drug testing, ... one-half the value of a boat, and a stolen gold watch are either criminal matters or claims for general civil damages, not claims under specific provisions of the Alaska Workers' Compensation Act." The board was correct in concluding that it can only adjudicate a dispute if the legislature has granted it adjudicatory authority.[11] Therefore, we determine this issue by examining whether the board had authority over Gunter's claims. We find it unnecessary separately to address the issue whether the board correctly determined that it lacked jurisdiction to interfere with criminal sanctions and penalties. Instead, we affirm the board's dismissal of all of Gunter's reimbursement claims because those claims are not compensable under the workers' compensation act.[12]

■ The board was created by the act and its authority is limited to the powers and duties prescribed by that act.[13] Therefore, the board was empowered to grant Gunter's reimbursement claims only if his claims were compensable under the act. The workers' compensation act provides that employers are strictly liable to their injured employees for medical treatment, rehabilitation, and disability benefits.[14] Gunter's reimbursement

---

**10.** Gunter also appears to seek reimbursement for the entire value of Kathy–O–Estates, which he contends he would have inherited but for his brain injury, stating that "[b]ecause of this work accident I lost Kathy–O–Estates Inc. 4 million [dollars] & happy life." We decline to address this argument because the claim was not raised before the board or the superior court. *See Reid v. Williams*, 964 P.2d 453, 456 (Alaska 1998) (noting that we "will not ordinarily consider issues unless they were raised in the trial court").

**11.** *See Far N. Sanitation, Inc. v. Alaska Pub. Util. Comm'n*, 825 P.2d 867, 871 n. 5 & 873 (Alaska 1992) (holding that agency does not have "powers beyond those which are authorized by legislative grant," express or implied). *See also Blanas v. Brower Co.*, 938 P.2d 1056, 1061 (Alaska 1997)

(quoting with approval idea "that a public service commission is an administrative agency created by statute and as such has no inherent powers, but only such as have been expressly granted to it by the legislature or have, by implication, been conferred upon it as necessarily incident to the exercise of those powers expressly granted") (quoting *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1033 n. 19 (Alaska 1972)).

**12.** AS 23.30.

**13.** *See* AS 23.30.005.

**14.** AS 23.30.045(a)-(b) (citing AS 23.30.041, which governs liability for rehabilitation, AS 23.30.050 and AS 23.30.095, which govern liabil-

claims do not involve issues of medical treatment, rehabilitation, or disability benefits.[15] Because the board is empowered to provide compensation under the act and because the act does not provide a means of compensating employees for the remote consequences of their injuries, such as those for which Gunter seeks reimbursement, the board was correct in deciding that it did not have the authority to grant Gunter's requested relief.

■ To the extent that Gunter was seeking reimbursement outside of the structure provided by the workers' compensation act, the board was correct that the act immunized Kathy–O–Estates from such civil liability. The act generally provides the exclusive remedy for injured employees: Alaska Statute 23.30.055[16] establishes that an employer's workers' compensation liability, which the employer must pay irrespective of fault, "is the exclusive remedy for an employee injured during the course of employment."[17] This limited workers' compensation remedy was made exclusive for the benefit of both employers and employees:

> The exclusiveness of the remedy reflects a *quid pro quo* exchange of rights and liabilities for both workers and employers. Workers gain an assured remedy without the burden of proving fault, but lose the right to sue their employers in tort. Employers gain relief from large tort damage

awards and enjoy an absolute limit on liability under the Act, but are liable without fault for injuries covered under the Act.[18]

The remedy provided by the act is exclusive, and employees generally cannot obtain compensation outside of the system provided by the act. Because Kathy–O–Estates provided workers' compensation benefits, the board was correct that Kathy–O–Estates is immune from Gunter's claims seeking to impose general civil liability on it. Kathy–O–Estates is only liable for the benefits provided by the act because Kathy–O–Estates is paying compensation pursuant to AS 23.30.055 under the C & R. Gunter's claims are not compensable because the limited and exclusive nature of workers' compensation benefits precludes Gunter from pursuing any claims for compensation beyond the wage-based compensation provided by the act.

**B. The Superior Court Did Not Err in Allowing CAPA To Dismiss Gunter's Attempt To Overturn the C & R that Governed Kathy–O–Estates's Workers' Compensation Obligation to Him.**

■ Gunter also challenges the 1992 C & R in which the parties agreed that Kathy–O–Estates would pay Gunter $175 per week for ten years and $200 per week after that. Gunter filed a claim seeking to overturn the

---

ity for medical costs, AS 23.30.145, which governs liability for legal costs, and AS 23.30.180–23.30.215, which govern liability for death and disability benefits).

**15.** The board has jurisdiction to grant permanent total disability benefits under AS 23.30.180, which provides that employees can only be compensated for their permanent total disabilities with a percentage of their weekly wages: "[i]n case of total disability adjudged to be permanent 80 percent of the injured employee's spendable weekly wages shall be paid to the employee during the continuance of the total disability." The method for calculating the employee's spendable weekly wage is set out in AS 23.30.220(a), which provides in relevant part that "[c]omputation of compensation under this chapter shall be on the basis of an employee's spendable weekly wage at the time of injury. An employee's spendable weekly wage is the employee's gross weekly earnings minus payroll tax deductions." As these statutes make clear, the Alaska Workers' Compensation Act attempts to replace an employee's lost wage-based income. It does not provide an

employee with benefits covering any future expenses that might conceivably have some relation to his or her injuries, such as those for which Gunter now seeks compensation.

**16.** Alaska Statute 23.30.055 provides in relevant part that

> [t]he liability of an employer prescribed in AS 23.30.055 is exclusive and in place of all other liability of the employer and any fellow employee to the employee.... However, if an employer fails to secure payment of compensation as required by this chapter, an injured employee or the employee's legal representative in case death results from the injury may elect to claim compensation under this chapter, or to maintain an action against the employer in law or admiralty for damages on account of the injury or death.

**17.** *Fenner v. Municipality of Anchorage*, 53 P.3d 573, 575 (Alaska 2002).

**18.** *Suh v. Pingo Corp.*, 736 P.2d 342, 344 (Alaska 1987).

C & R on July 8, 1998. The board initially determined, based on the opinion of Dr. Paul L. Craig, that Gunter was not competent to represent himself in seeking to overturn the C & R. It postponed ruling on Gunter's attempt to overturn the C & R because CAPA was attempting, pursuant to a superior court order, to find an attorney to represent Gunter in the matter. CAPA was unable to find an attorney willing to take Gunter's case, and the superior court appointed CAPA as Gunter's guardian/conservator "to provide legally trained staff to informally advise and assist Gunter in [these] proceedings." The superior court ordered the board to dismiss all pending claims, including Gunter's challenge to the C & R, if CAPA filed a stipulation to that effect. This stipulation was filed and the board dismissed Gunter's pending claims.[19] Gunter appeals the superior court's dismissal of his challenge to the C & R, and, by implication, the superior court's decision allowing CAPA, as Gunter's guardian/conservator, to stipulate to the dismissal of Gunter's challenge to the C & R.

We must analyze Gunter's appeal in light of the superior court order denying Gunter the power to challenge the C & R without the assistance of counsel or his guardian/conservator. The order would appear to prevent Gunter from pursuing this appeal. But we recognize that a ward must have some means of contesting legal decisions made by his or her guardian. We conclude that we should review a ward's appeal of a tribunal's dismissal of his or her case pursuant to a guardian's or conservator's decision to dismiss the case by determining whether the ward presents a colorable, or plausible, claim.[20] If the ward presents such a claim, we will appoint counsel to assist the ward in pursuing it. In this case, we would appoint counsel to assist Gunter in pursuing his challenge to the C & R if he presented a colorable claim that the superior court should not have allowed CAPA to dismiss his attempt to overturn the C & R. Upon our review of the record, we conclude that Gunter's challenge to the dismissal of the C & R is not colorable.[21]

In examining Gunter's appeal of the dismissal of his challenge to the C & R, the key question is whether the superior court erred by granting CAPA the authority to dismiss Gunter's claims. We have established that a properly appointed conservator has the authority to settle a lawsuit under AS 13.26.280(c)(19).[22] Therefore, CAPA's dis-

---

19. *Gunter v. Kathy–O–Estates*, AWCB Decision No. 02–0054 (March 27, 2002).

20. A ward's challenge to a guardian's decision is analogous to an indigent defendant's challenge to appointed counsel's determination that the defendant does not have a colorable claim for post-conviction relief. *See* Alaska Rule of Criminal Procedure 35.1. In the event that an appointed attorney believes that his or her client's application for post-conviction relief is completely without merit, Rule 35.1(e)(2) provides that the attorney may:

> file with the court and serve on the prosecuting attorney
>
> ....
>
> (B) a certificate that counsel
> (i) does not have a conflict of interest;
> (ii) has completed a review of the facts and law in the underlying proceeding or action challenged in the application;
> (iii) has consulted with the applicant and, if appropriate, with trial counsel; and
> (iv) has determined that the application does not allege a colorable claim for relief.

Rule 35.1(f)(2) provides that the appellate court must review a certificate filed under Rule 35.1(e)(2)(B) and "permit counsel to withdraw and order the application dismissed" if the appli-

cant has no colorable claim for post-conviction relief or fails to respond to the certificate.

21. The procedural posture of this case is somewhat unusual. Only final judgments may be appealed. Here, the superior court remanded an administrative appeal to an agency for further proceedings. A remand order is not a final judgment. *City and Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979). (Moreover, Gunter, who is *pro se*, did not appeal the board's dismissal of Gunter's claims to the superior court.) But rather than dismiss Gunter's appeal on the ground that the superior court remanded the case to the administrative agency, we treat it as a petition for review because Gunter's injury poses a severe hardship in his efforts to navigate the court system. *See Municipality of Anchorage v. Anderson*, 37 P.3d 420, 421 (Alaska 2001) (stating that we will "treat an appeal improperly brought from a non-final order as a petition for review 'in order to prevent hardship and injustice' " (quoting *Thibodeau*, 595 P.2d at 631)).

22. *In re S.H.*, 987 P.2d 735, 739 (Alaska 1999). Alaska Statute 13.26.280(c) requires that a conservator must be properly appointed and that the conservator's actions must be reasonable in order to settle a lawsuit for his or her ward:

missal of Gunter's challenge to the C & R can be challenged on only two grounds on appeal: (1) that CAPA was improperly appointed as guardian/conservator with authority over Gunter's workers' compensation claims or (2) that CAPA's actions were unreasonable. Because CAPA was properly appointed as guardian/conservator over Gunter's claims and because CAPA's actions with respect to those claims were reasonable, Gunter does not have a plausible challenge to the superior court's decision granting CAPA the authority to dismiss Gunter's claims and the resulting dismissal of those claims.

### 1. CAPA was properly appointed as Gunter's guardian/conservator with authority over his claims seeking to overturn the C & R.

Gunter has a long history of guardianship and conservatorship proceedings, and the superior court's order appointing a "guardian/conservator" in September 2001 relies on that history. Though guardianship and conservatorship proceedings are quite similar, there are separate statutes governing each appointment. Alaska Statute 13.26.165, which governs the appointment of conservators, provides that:

[u]pon petition and after notice and hearing in accordance with the provisions of AS 13.26.165–13.26.315, the court may appoint a conservator or make other protective order for cause as follows:

. . . .

(2) appointment of a conservator or other protective order may be made in relation to the estate and affairs of a person if the court determines that

(A) the person is unable to manage the person's property and affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability . . . and

[a] conservator, acting reasonably in efforts to accomplish the purpose for which the conservator was appointed, may act, without court authorization or confirmation, to

. . . .

(19) pay or contest any claim; to settle a claim by or against the estate or the protected person by compromise, arbitration, or otherwise; and to release, in whole or in part, any claim

(B) the person has property which will be wasted or dissipated unless proper management is provided . . .

Likewise, AS 13.26.113(e), which governs the appointment of guardians, provides that after a hearing,

[i]f it is found that the respondent is able to perform some, but not all functions necessary to care for the respondent, and alternatives to guardianship are not feasible or adequate to provide for the needs of the respondent, the court may appoint a partial guardian, but may not appoint a full guardian.

The partial guardian's authority is limited to "the powers and duties respecting the ward enumerated in the court order." [23]

It is apparent from the record that CAPA's authority to dismiss Gunter's claims for him was properly established in a manner that protected Gunter's rights under either the guardianship or conservatorship statutes. In its September 2001 order, the superior court modified Gunter's existing guardianship order to make CAPA Gunter's temporary, partial guardian/conservator "[f]or the purposes of advising and assisting Mr. Gunter in all administrative proceedings before the [board]." The superior court order specifically granted CAPA the authority to "allow those proceedings to continue, engage in settlement negotiations and enter into binding settlement agreements on Mr. Gunter's behalf, or dismiss those actions on behalf of Mr. Gunter where CAPA determines that such action is in his best interests." The superior court held a hearing, at which Gunter was represented by an attorney and had the benefit of a court-appointed visitor.[24] The superior court based its appointment of CAPA, for the limited purpose of protecting Gunter's workers' compensation benefits, on the "complexity of these proceedings and the

belonging to the estate to the extent that the claim is uncollectible.

**23.** AS 13.26.150(b).

**24.** The court must appoint a visitor to investigate the prospective ward's incapacity and evaluate whether the prospective ward needs a guardian. AS 13.26.106(c); AS 13.26.108.

severity of Mr. Gunter's injury." The determination that these proceedings were too complex for Gunter to manage on account of his brain injury is supported by a significant amount of evidence establishing the severity of Gunter's injury. Gunter himself establishes that his injury has left him unable to understand the C & R, stating that "[a]ll I understand about [the] compensation rate is work me for life. I have not understood at all compensation rate." The superior court cannot be said to have "committ[ed] clear error in accepting the evidence as clear and convincing proof of [Gunter's] inability to manage his property and affairs effectively." [25] Accordingly, the superior court did not abuse its discretion in appointing CAPA to protect Gunter's workers' compensation benefits.[26] Therefore, Gunter does not present a colorable claim that the superior court erred by granting CAPA the authority to dismiss Gunter's challenge to the C & R.

### 2. CAPA acted reasonably by dismissing Gunter's claims attempting to overturn the C & R.

The superior court's approval of CAPA's decision to dismiss Gunter's claims also does not present a colorable claim of error because CAPA's decision was reasonable. After unsuccessfully attempting to secure representation for Gunter, CAPA stated in a report to the superior court that

> [t]he fact that no attorney seems interested in representing Mr. Gunter in this matter is evidence that this appeal may be unlikely to bring sufficient financial benefit to Mr. Gunter to justify the expense of pursuing it.

> If Mr. Gunter is successful in setting aside the compromise[ ] and release, he runs the risk that the ultimate decision could be the same or even less than he has been receiving under the settlement. For this appeal to benefit him, he must prevail in setting aside the agreement and then win substantially more. This result appears unlikely.

CAPA appears to be correct that Gunter faced a very real threat that he would receive a lesser award if the C & R was overturned, as Kathy–O–Estates originally claimed that Gunter was entitled to compensation of only $74.99 per week, a claim that was probably correct. Kathy–O–Estates eventually agreed to the weekly compensation rate of $175 to $200 per week specified in the C & R. The reasonableness of CAPA's decision is supported by CAPA's inability to find a lawyer to represent Gunter on a contingency basis. CAPA was also correct in noting, as discussed above, that it was highly unlikely that Gunter would succeed in his novel attempt to gain compensation for the inheritance he believes he would have received but for his injury. We hold that CAPA acted reasonably in exercising its authority to dismiss Gunter's challenge to the C & R. Therefore, we hold that Gunter does not have a colorable claim that the superior court erred by allowing the dismissal of his challenge to the C & R.

## V. CONCLUSION

We hold that the board did not err in dismissing Gunter's claims seeking reimbursement for the alleged financial consequences of his brain injury and that the superior court did not err by allowing CAPA to dismiss Gunter's attempt to overturn the C & R. The decisions of the board and the superior court are accordingly AFFIRMED.

---

**25.** *In re S.H.,* 987 P.2d at 741.

**26.** *See H.C.S. v. Cmty. Advocacy Project of Alaska, Inc.,* 42 P.3d 1093, 1096 (Alaska 2002).