John WALKER, Appellant,

v.

Susan WALKER, Appellee.

No. S–11526.

Supreme Court of Alaska.

Jan. 26, 2007.

---

Dan O'Phelan, Hilo, Hawaii, and Robert D. Lewis, Lewis & Thomas, P.C., Nome, for Appellant.

Jamy Patterson and Russell A. LaVigne, Jr., Alaska Legal Services Corp., Kotzebue, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

John Walker filed for divorce from Susan Walker in 2002. The superior court issued an order dividing their marital property in March 2004. John appeals on several grounds. First, he argues that the court undervalued a family business, Inuit Travel, and determined its value based on the trial judge's personal experience with travel agencies in Kotzebue. Second, John argues that the court erred in rejecting late-filed evidence concerning two tax debts. Last, he challenges the court's decision to award almost sixty percent of the marital estate to Susan without making specific findings to justify the unequal division.[1] We see no clear error in valuing Inuit Travel and no abuse of discretion in rejecting John's late filings. But since an unequal property division must be supported by findings, we remand for further consideration of the order dividing the marital estate.

## II. FACTS AND PROCEEDINGS

John and Susan Walker separated in February 2002 after over twelve years of marriage. John filed for divorce in April 2002. They own two businesses in Kotzebue with similar names: Inuit Travel and Inuit Air.

The superior court held a trial on the property issues on September 16–17, 2003. It issued a proposed property division on November 18, 2003, along with an order di-

---

1. John originally raised a number of other points but withdrew them in his reply brief.

recting the parties to submit any proposed changes by November 26. John responded on November 30 with his "Notice to Court on Proposed Property Schedules and Miscellaneous Items." In this filing, John gave no reason for his late submission and did not even acknowledge that his filing was late. In addition to suggesting adjustments to the court's proposed property division table, John's "Notice" informed the court that the table would need to include payroll taxes for Inuit Air, stating that John was waiting for documentation of these taxes from his accountant.

On January 7, 2004, John moved to include his own tax debt of $19,213 from 2001 in the marital estate.[2] John claimed to have learned of this debt via mail "over the holidays." The superior court denied John's motion in early February, explaining that John's request was untimely because he filed it after the November 26 deadline even though he apparently had known of the debt before the September trial: as Susan pointed out in her opposition to John's motion, the date imprinted by the fax machine on the papers John sent to his attorney was May 25, 2003.

John filed a "Motion to Clarify Tax Debt; Notice of Payroll Tax Debt, and Request for Hearing" in late January, in which he again stated his request that the court include his $19,213 personal tax debt in the property division and sought to include the Inuit Air tax debt he had first identified in his late-filed response to the court's proposed property division. The superior court eventually denied John's motion to include the Inuit Air payroll taxes. It reiterated its stance from the order denying John's untimely motion to include his personal tax debt that John's failure to comply with the court's timeline barred him from offering evidence of various tax liabilities. The court granted John's request for a status hearing.

At the March 24, 2004, status hearing, the superior court divided the Walkers' property by an oral judgment on the record. John moved for reconsideration on May 3, but the superior court did not rule on the motion, so it was deemed denied after thirty days according to Alaska Civil Rule 77(k)(4). John appealed.

## III. DISCUSSION

### A. Standard of Review

 In property division cases, we review the trial court's judgment for abuse of discretion.[3]

The division of property by the trial court is a three-step process: Step one—determining what property is available for distribution—is reviewed under the abuse of discretion standard, although it may involve legal determinations to which this court applies its independent judgment. The second step—placing a value on the property—is a factual determination that will be upset only if there is clear error. Step three—allocating the property equitably—is reviewed purely under the abuse of discretion standard and will not be disturbed unless it is clearly unjust.[4]

 A finding is clearly erroneous if it leaves us with a definite and firm conviction on the entire record that a mistake has been made.[5] We review the trial court's procedural decisions for abuse of discretion.[6]

### B. Valuation of Inuit Travel

The superior court valued Inuit Travel by summing its various assets and liabilities without accounting for business goodwill, assigning the business a value of $34,141.78. John objects to this valuation and argues that Inuit Travel is actually worth $374,204. John argues that the court erred in three

---

2. John characterizes this as a corporate tax debt for Inuit Air. But the IRS made the changes that resulted in the debt to John's personal tax return, rather than the corporate return. We treat the $19,213 debt as John's individual debt, albeit a marital one, because that is how the IRS characterized it.

3. *Moffitt v. Moffitt,* 749 P.2d 343, 346 (Alaska 1988).

4. *Id.* (citations omitted).

5. *Hallam v. Alaska Airlines, Inc.,* 91 P.3d 279, 283 (Alaska 2004) (quotation omitted).

6. *Dougan v. Aurora Elec. Inc.,* 50 P.3d 789, 793 (Alaska 2002).

ways: first, by failing to account for Susan's dissipation of the value of the business; second, by relying on its own knowledge of the Kotzebue travel market to find there to be no marketable goodwill in the business; and third, by subtracting from the value of the business a $25,000 line of credit based on Susan's testimony. We review the superior court's valuation of this marital asset for clear error.[7]

### 1. Dissipation of Inuit Travel's value

John argues that the superior court should have valued Inuit Travel at the time the parties separated, rather than at the time of trial. He maintains that Susan dissipated the assets of Inuit Travel during the course of the litigation. In support of this argument, John cites Susan's testimony that she was earning approximately $1,300 per month in September 2003 and that she had earned approximately $3,000 per month in 2001.

The date on which the trial court values marital property generally should be as close as practicable to the date of trial, but in special situations the court may value property as of the date the parties separated.[8] In those special situations, the court must make "specific findings as to why the date of separation is the more appropriate choice for valuation."[9] John implies that Susan was responsible for the drop in her income between 2001 and 2003 but does not explain why the drop should be attributed to Susan's conduct, rather than to a general slowdown in business or other neutral factors. John argues that "the trial court failed to make the requisite findings regarding . . . dissipation" but does not point to evidence that would support such findings. Valuation at the time of trial is the norm; the trial court is only required to make specific findings when it decides that the date of separation is more appropriate for valuation than the date of trial.[10] The trial court did not err in following the standard procedure of valuing Inuit Travel at the time of trial.

### 2. Goodwill calculation

John argues that the superior court improperly took "judicial notice" of information available only to the trial court regarding Inuit Travel's goodwill value. In support of this argument, John refers to this observation by the court at trial:

THE COURT: Hold on folks. Look, what I heard so far is that the [Airlines Reporting Corporation (ARC) accreditation] certificate is the asset. And that's the value of the business. I mean that's [what] let[ ]s [them] do business. So the question . . . .

MR. O'PHELAN: And the contract, Your Honor, a contract that's very, very lucrative. It's $300,000 a year.

THE COURT: The contract is very, very lucrative, we've heard testimony that maybe in the next two months they might quit it or they might not. I understand the contract stuff. There's a whole bunch—and let me explain, that I used to be the attorney for the competing travel agency when it first started. So maybe the issues might be understanding something about the ARC certificate. Because that's really the thing that gets you to the contract. So . . . .

John appears to challenge the court's observation that the Airlines Reporting Corporation (ARC) accreditation certificate is central to the value of the travel agency. But just before the court made this observation, Susan had testified that her ARC certificate was the most important attribute of her business. Susan explained that an ARC certificate requires training and that if someone were to take over the business who was not qualified to operate the certificate, the certificate would be worthless because the person would not be able to get any contracts for reservation systems or to procure tickets. Susan also testified that the travel market in Kotzebue was small. Susan was a full-time nursing student at the time of trial and planned to leave the travel business. Fur-

---

**7.** *See Moffitt,* 749 P.2d at 347.

**8.** *Doyle v. Doyle,* 815 P.2d 366, 369 (Alaska 1991).

**9.** *Id.*

**10.** *Id.*

thermore, a contract with Maniilaq made up almost all of Inuit Travel's business, and that contract was at-will so it could not support the value John gave to the business. Susan's testimony was uncontroverted; John did not offer a business appraisal or other evidence to contest this point at trial. The court therefore could rely on Susan's testimony in finding that Inuit Travel had no marketable goodwill value.

■ John fails to describe any evidence in the record that supports his theory that the business had a marketable goodwill value. Indeed, the record indicates that John had offered to buy the business from Susan for only $20,000—a mere fraction of its supposed goodwill value. Accordingly, John has failed to meet his burden of showing prejudice: any reference by Judge Richard Erlich to his own experience with the Kotzebue travel industry would seem harmless in light of the substantial and largely undisputed evidence supporting the court's determination of Inuit Travel's value.

■ In establishing the value of business goodwill, "if the trial court determines either that no [goodwill] exists, or that the [goodwill] is unmarketable, then no value for [goodwill] should be considered in dividing the marital assets. Conversely, the [goodwill] should be considered if the evidence suggests that it has value and is marketable." [11] When it valued Inuit Travel at the post-trial status hearing, the court addressed John's arguments for assigning a high value to Inuit Travel and found John's valuation to be "speculative." Based on the evidence and testimony presented at the trial, the court found that Inuit Travel was "closing up." It also cited John's offer to purchase Inuit Travel for $20,000 as an indication that the near-$400,000 figure was inaccurate. The court found that "the testimony demonstrates, given the history of that kind of business in Kotzebue, the nature of the market, that really as a going concern it really doesn't have—it has a negligible value." The court did not clearly err in valuing Inuit Travel with no goodwill.

**3. Inuit Travel's $25,000 line of credit**

■ The superior court calculated Inuit Travel's value by subtracting a $25,000 debt on a line of credit without requiring Susan to document the credit line's existing status. John argues that this was clear error. Susan provided no documentation concerning the credit line at trial but testified that the building that houses Inuit Travel was collateral for this $25,000 debt. The trial court had discretion to assess Susan's credibility and accept her testimony—without documentation—that this $25,000 credit line existed. John points out that Susan described the $25,000 as available credit but never indicated at trial how much was actually owed on this line of credit. But in her affidavit supporting her opposition to John's January 7 motion to include his $19,213 tax debt, Susan indicated that the balance on the line of credit to Inuit Travel was $25,000. This evidence clarifies any ambiguity in Susan's testimony. The trial court did not clearly err in subtracting $25,000 from the value of Inuit Travel based on Susan's testimony and affidavit.

**C. Refusal of Late Filings from John**

After the September 2003 trial, the superior court set a deadline of November 26, 2003, for the parties to file any corrections or additions to the property schedules it proposed to use to value and divide the marital estate. John argues that the court should have relaxed that deadline and accepted his untimely motions regarding his $19,213 tax debt and Inuit Air's payroll tax debt of almost $30,000. We review the superior court's procedural decisions for abuse of discretion. [12]

**1. Inuit Air payroll tax**

■ The superior court issued a proposed property division order on November 18, 2003, and directed the parties to submit any proposed changes to the court by November 26. John responded on November 30 and notified the court that he wished to include Inuit Air's payroll tax debt in the

**11.** *Moffitt,* 749 P.2d at 347.

**12.** *Dougan,* 50 P.3d at 793.

marital estate but was still waiting to receive documentation of this debt from his accountant. John gave no explanation for responding after the November 26 deadline. Two months later, John filed a "Notice of Payroll Tax Debt" in which he stated that his accountant had informed him that Inuit Air had "as much as $30,000" in payroll tax debt, but that he still had no concrete figures or documentation. The superior court denied John's motion to include the Inuit Air payroll tax debt in the property division, ruling that the motion was late because John had first notified the court of the debt after the November 26 deadline.

The record fails to establish that the superior court abused its discretion in refusing John's late request to include the Inuit Air tax debt in its calculations. Milton Johnson, John's accountant, had testified at the September trial about Inuit Air's tax situation and never mentioned any potential debt that the court might need to consider in valuing Inuit Air. John's November 30 submission mentioned the potential debt and stated that his accountant would provide further documentation. But in his January motion, John still offered nothing more than an estimate of the size of the debt and no evidence to support his claim other than his own affidavit stating that he "also may be liable for as much as $30,000 in payroll taxes" for Inuit Air. In sum, John did not meet the court's initial deadline and failed to show good cause for the late filing; offered no concrete evidence to support his claim that the debt existed; and did not specify when he would actually receive the information. Given these circumstances, the superior court did not err in refusing to factor this payroll tax into its valuation of Inuit Air.

### 2. John's $19,213 tax debt

■ In January 2004 John moved to include a tax debt of $19,213 in the property settlement. John claimed to have learned of

this debt "over the holidays." The superior court denied John's motion, noting that John evidently had been aware of the tax debt in May 2003, but had failed to present evidence before or during trial. The court emphasized that it had ordered the parties to submit their proposed valuations and distributions of any assets not already in the court's proposed distribution table by November 26, 2003.

Although the superior court's finding that John knew of his tax debt in May 2003 might be debatable, evidence in the record supports the conclusion that John was aware of the debt before November 26, and well before January 7.[13] The IRS form John offered as evidence of his tax debt is dated August 11, 2003. And the letter from the IRS that John submitted to the court is dated November 10, still before the November 26 deadline. The alleged debt was over one year old at the time of trial. John cursorily argued that he did not actually receive notice of it until December of 2003. But he offered no evidence to support this claim. John failed to show either that he was actually unaware of the debt before trial or that he could not have discovered it through reasonable pretrial inquiry. Absent an affirmative showing of good cause, it was not an abuse of the superior court's discretion to deny John's late-filed motion to include his tax debt in the division of the marital estate.

### D. Lack of Findings To Support Unequal Property Division

■ The superior court divided the marital property by giving Susan's business (Inuit Travel) and the couple's house to Susan, John's business (Inuit Air) and a vacant lot to John, and allowing the parties to divide the personal property between themselves. The court initially believed that this approach resulted in an approximately equal division of

---

**13.** The court relied on the "May 25, 2003" date stamp at the top of the faxed copy of the IRS statement John submitted to find that John had notice of the debt since May 2003, rather than, as John claimed, December 2003. But the May 2003 date stamp was incorrect. A clean copy of the document submitted by John with his Janu-

ary 29 motion to clarify the tax debt issue shows that the form is dated August 11, 2003; this date was covered by the fax machine date stamp on the copy of the document John submitted to Susan and the court with his initial January 7 motion to include the tax debt.

the marital estate.[14] But during the status hearing, the superior court discovered that it had erred in valuing Inuit Air by counting a $23,198.41 debt as a credit. The court corrected its mistake by subtracting the $23,198.41 credit and adding the $23,198.41 debt to the value of Inuit Air; this reduced the value of Inuit Air by $46,396.82—from $104,937.91 to $58,541.09. The court recognized that the error resulted in an unequal property division. But in spite of its original intent to divide the property equally, the court did not alter its distribution to correct the inequality or make findings to support an unequal division. John argues that the superior court erred in awarding more than fifty percent of the marital estate to Susan without making findings to support that award. We review the court's overall property division for abuse of discretion and will not disturb it unless it is clearly unjust.[15]

When dividing marital property, the trial court must consider the *Merrill* factors codified in AS 25.24.160.[16] In the absence of findings to warrant an unequal division, an equal division of the marital estate is presumptively the most equitable.[17] Here, the superior court did not make *Merrill* findings, but awarded approximately sixty percent of the marital estate to Susan.[18] Having discovered during the course of the status hearing that the division it intended to be equal actually tilted in Susan's favor, the court should have made findings to justify the inequality or reallocated the property equally. In the absence of findings, the uneven division amounted to an abuse of discretion. We therefore vacate the court's overall property division and remand for findings or adjustments to correct or justify the inequality.

**IV. CONCLUSION**

We AFFIRM the superior court's valuation of Inuit Travel and its refusal to consider John's late-filed tax debt information. We VACATE the overall property division and REMAND to the superior court to reconsider the overall equitable distribution of the marital estate and enter express findings consistent with the *Merrill* factors codified in AS 25.24.160.

**14.** The court's initial calculations resulted in each party receiving approximately $140,000 plus the personal property they divided between themselves. Susan received the house, worth $108,051.94, and Inuit Travel, worth $34,141.78, for a total of $142,193.72. John received the vacant lot, worth $35,000, and Inuit Air, originally thought by the court to be worth $104,937.91, for a total of $139,937.91.

**15.** *Moffitt,* 749 P.2d at 346.

**16.** *Tybus v. Holland,* 989 P.2d 1281, 1286 (Alaska 1999). The *Merrill* factors include the "financial condition" of the parties and the "circumstances and necessities" of each party. *Veselsky v. Veselsky,* 113 P.3d 629, 637 (Alaska 2005) (citing AS 25.24.160(a)(4)).

**17.** *See Veselsky,* 113 P.3d at 637.

**18.** The court's recalculations resulted in an award of $142,193.72 to Susan but only $93,541.09 to John.