BERING STRAITS NATIVE CORPORA-
TION and Bering Straits Investment
Co., Appellants,

v.

William BIRKLID, John and Grace Bu-
trovich, Frank S. and Sophie M. Krize,
Louis E. and Sophie M. Krize, Elkan J.
Morris, Elkan and Ann Morris, Leo A.
Schlotfeldt, Leo A. and Agnes H.
Schlotfeldt as Trustees for Leo A.
Schlotfeldt Trust, Leo Edward and Bar-
bara Schlotfeldt, Sourdough Heating
Inc., and Trustees's Services Inc., Ap-
pellees.

BERING STRAITS NATIVE CORPORA-
TION and Bering Straits Investment
Co., Appellants,

v.

Ralph E. WHITMORE, Jr., and
Trustee's Services Inc.,
Appellees.

Nos. S-1818, S-1790.

Supreme Court of Alaska.

July 24, 1987.

Bonnie Robson, Anchorage, for appel-
lants.

David W. Oesting and James A. Tupper,
Jr., Davis, Wright & Jones, Anchorage, for
appellee Whitmore.

James M. Hackett, Fairbanks, for addi-
tional appellees.

Before RABINOWITZ, C.J., and
BURKE, MATTHEWS and COMPTON,
JJ.

## OPINION

COMPTON, Justice.

This case arises out of the sale of shares
of Alaska National Bank of the North
(ANBN) stock to Bering Straits Investment
Company (BSIC). The sellers, some of
whom were directors of ANBN, sought
judgment against BSIC and its guarantor,
Bering Straits Native Corporation (BSNC),
for amounts past due. BSIC defended on
the ground that it was fraudulently in-
duced into purchasing the stock. The trial
court granted summary judgments to the
sellers, and BSIC and BSNC appealed. We
affirm.

The terms of the agreement between the
parties are set forth in a Stock Purchase
Agreement and Future Stock Contract,
both executed December 10, 1975.

The Stock Purchase Agreement provided in part:

4. *Warranties of Sellers:* Sellers and each of them, represent, warrant and guarantee as follows:

. . . .

(c) That Sellers know of no facts which would cause the value of capital stock outstanding, surplus and undivided profits of Bank, after provision for federal and state income taxes, as of December 31, 1975, to be less than $65 per common stock share outstanding as of said date, it being understood and agreed that ascertainment of facts in the knowledge of Sellers resulting in a per share value below $65 as of said date shall result in an adjustment in the purchase price per Subject Share equal to double the amount of such deficiency, with the adjusted portion to be deducted from the 1977 principal installment payable by Buyer to Sellers; notice of such adjustment shall be provided to Sellers by Buyer no later than June 30, 1976; . . .

The Future Stock Purchase Agreement contained a virtually identical warranty. In August 1977 BSIC claimed an offset against the purchase price, alleging that the book value of the stock was only $57.75 per share, not $65 per share as warranted by the sellers. Sellers explicitly disagreed.

Despite this disagreement, which BSIC did not then pursue, the sellers and BSIC entered into an amendment to the original agreement in December 1977, which expressly and retroactively deleted the warranted price provision of the original agreement. The parties also entered into an additional stock purchase agreement, which contained no warranted price provision.

In August 1980 the parties entered into another "Amendment to Stock Purchase Agreement, as Previously Amended, and Additional Stock Purchase Agreements." This document contains the following express ratification:

Except as otherwise specified herein or in any prior written amendment the parties ratify all Agreements and all the terms and conditions therein stated.

In our view, this ratification is dispositive of this appeal.

▆ In order to avoid a contract on the ground of misrepresentation, a party must show four things: 1) that there was a misrepresentation, 2) which was fraudulent or material, 3) which induced the party to enter the contract, and 4) upon which the party was justified in relying. *Johnson v. Curran,* 633 P.2d 994, 997 (Alaska 1981); *see also* Restatement (Second) of Contracts, § 164 (1981).

▆ Even assuming that BSIC and BSNC can show the existence of each of these elements, their execution of the 1980 amendment and ratification establishes that their fraudulent inducement defense is meritless.

The Restatement (Second) of Contracts provides in part:

§ 380 Loss of Power of Avoidance by Affirmance.

. . . .

(2) The power of a party to avoid a contract for mistake or misrepresentation is lost if after he knows or has reason to know of the mistake or of the misrepresentation if it is non-fraudulent or knows of the misrepresentation if it is fraudulent, he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.

BSNC and BSIC base their fraudulent inducement defense on the following alleged misrepresentations or material omissions: 1) the actual book value of the stock purchased in 1975 was less than warranted by the sellers; 2) sellers did not inform them of ANBN's relatively small loan loss reserve and liberal bad loan charge-off policy; and 3) sellers failed to inform them of an impending new stock issue by ANBN at a price lower than that to be paid under the 1975 agreement.

▆ BSNC and BSIC lost the power to avoid the original purchase agreement based on any of these grounds by executing the 1980 amendment and ratification. By the date of the ratification, BSIC and

BSNC knew [1] that: (a) Earl Scudder, attorney for BSIC and BSNC, had agreed with sellers' attorney in 1975 that the $65 value warranted by sellers included reserves for bad debts; [2] (b) in 1975 ANBN was contemplating a public offering of stock at a price less than the stated value specified in the 1975 agreements (ANBN in fact had announced this public offering in 1976); (c) Morgan Guaranty Trust Company had evaluated ANBN based on publicly available unaudited financial data on behalf of other native corporation potential investors in 1976, and found ANBN thinly capitalized because of its loan/capital ratio and poor debt charge-off policy; [3] (d) in 1977 John Heen, attorney for BSIC and BSNC, had claimed an offset against the purchase price based upon alleged misrepresentation by the sellers of the value of the stock and Henry Camarot, sellers' attorney, had explicitly disputed buyer's entitlement to the offset; (e) the 1977 amendments included deletion of the 1975 warranted price provision; (f) Peat, Marwick, Mitchell & Company had completed a public audit of ANBN in 1978 in which insufficient loan loss reserves were found, due in part to ANBN's use of other than generally accepted accounting principles; and (g) ANBN had itself determined and announced that its losses for the relevant period had been understated and its earnings overstated.

Despite the above information, BSNC, guarantor under the prior agreements and assignee of BSIC's rights thereunder, ratified "all Agreements and all the terms and conditions therein stated." Therefore, even assuming as we must for the purpose of the summary judgment motions that execution of the 1975 agreements was fraudulently induced, BSIC and BSNC lost any power they may have had to avoid the contract. Restatement (Second) of Contracts § 380 (1981).

In view of our disposition we need not address other arguments raised by BSIC and BSNC.

AFFIRMED.

MOORE, J., not participating.

---

1. The assertion made at oral argument by counsel for BSIC and BSNC that they could not be charged with knowledge of any information received before the 1979 replacement of their directors is wholly without merit. *See, e.g., Microbiological Research Corp. v. Muna,* 625 P.2d 690, 695 (Utah 1981) (notice to the board of directors of a fact is notice to the corporation, and no subsequent change of directors can require new notice of such fact) cited in 18B Am.Jur. 2d, Corporations § 1678 (1985).

2. If the actual book value was calculated excluding bad debt reserves, the per share value was less than that warranted by the sellers. If bad debt reserves were to be included the actual value exceeded the warranted value.

3. Morgan Guaranty nonetheless concluded that the per share price set out in the 1975 agreement was a reasonable price to pay.