Terry L. SMITH, Appellant,

v.

CSK AUTO, INC., Royal and SunAlliance, and Wilton Adjustment Service, Appellees.

No. S–12690.

Supreme Court of Alaska.

April 3, 2009.

Terry L. Smith, pro se, Fairbanks.

Robert L. Griffin and Krista M. Schwarting, Griffin & Smith, Anchorage, for Appellees CSK Auto, Inc. and Royal and SunAlliance.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

### OPINION

FABE, Chief Justice.

## I. INTRODUCTION

An employee who injured his back at work signed a partial compromise and release (C & R) of his workers' compensation claim, waiving reemployment benefits and permanent total disability benefits in exchange for $10,000. The Alaska Workers' Compensation Board approved the partial C & R. About two years later, the employee petitioned to vacate the partial C & R on a number of grounds. The Board and the Alaska Workers' Compensation Appeals Commission rejected his arguments. Be-

cause we determine that the Board failed to follow its own regulations when it approved the partial C & R, we reverse the decisions of the Commission and the Board and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

While working for CSK Auto in March 2001, Terry Smith hurt his back unloading cases of antifreeze from a truck. He worked the rest of that shift but sought medical attention the next day. CSK Auto paid temporary total disability (TTD) and medical benefits related to the injury.[1] Smith received treatment from doctors in both the Fairbanks area and Anchorage and began to see Dr. Susan Klimow in May 2001. After treatment and a course of physical therapy, Dr. Klimow determined that Smith was medically stable but could not return to the work he was doing when he injured his back; she rated him as having a five percent whole person permanent partial impairment (PPI) as a result of the injury. Dr. Klimow treated Smith until December 2001, when he changed doctors to Dr. Roy Pierson. Dr. Pierson later referred Smith to Dr. Susan Anderson.

CSK Auto requested a reemployment eligibility evaluation for Smith after receiving Dr. Klimow's assessment. The reemployment benefits administrator (RBA) determined that Smith was not eligible for benefits because in November 2001 Dr. Klimow had approved job descriptions for three jobs in the local labor market that Smith had done in the previous ten years.[2] Smith appealed the RBA decision to the Board in January 2002.

Smith continued to receive medical treatment for his back throughout 2002. In March 2002 Dr. Anderson recommended an Intradiscal Electrothermal Therapy (IDET) procedure. The adjuster who was working on Smith's case later contacted Dr. Klimow to see if she agreed with Dr. Anderson that Smith might benefit from an IDET procedure. When Dr. Klimow indicated her

---

1. We refer to CSK Auto, Inc. and its insurance adjuster collectively as "CSK Auto."

2. To be eligible for reemployment benefits, an employee must be unable to return to his job at the time of injury or to other jobs existing in the labor market that he held in the ten years prior to his injury. AS 23.30.041(e).

agreement with Dr. Anderson, the adjuster reclassified all the PPI benefits Smith had received as TTD benefits and began to pay Smith TTD benefits again.

In July 2002 Barbara Williams, a non-attorney representative, entered an appearance on Smith's behalf. Williams attended a prehearing conference where the parties agreed to a hearing on Smith's claim; the hearing was scheduled for October 17, 2002. In the month before the hearing, Williams and CSK Auto negotiated a partial settlement of Smith's claim. According to the terms of the partial C & R, Smith received $10,000 as payment for his reemployment benefits and permanent total disability (PTD) benefits. CSK Auto agreed to be responsible for future reasonable and necessary medical care related to the injury as well as other future benefits, except for those Smith specifically waived. CSK Auto retained the right to contest future medical benefits. Smith signed the partial C & R on October 10, 2002. The partial C & R was filed with the Board, which approved it on October 17, 2002, after a brief hearing. Williams was present at the hearing, but Smith was not.

Smith underwent the IDET procedure about two weeks after the partial C & R was approved. He had scheduled the procedure with Dr. Anderson before signing the agreement, but the adjuster did not complete travel arrangements for the procedure until after Smith had signed the partial C & R.

In July 2003, after Dr. Anderson determined that Smith was medically stable, CSK Auto required him to attend an independent medical evaluation (IME) for an impairment rating. Dr. Patrick Radecki conducted the IME. Dr. Radecki concluded that Smith was unintentionally magnifying his symptoms. Dr. Radecki believed that Smith had "mild degenerative disc disease" unconnected to his work injury and recommended that Smith not have further medical care related to the work injury. Shortly after Dr. Radecki's evaluation, CSK Auto controverted continuing medical care. Smith responded by rescinding all of his medical releases. Smith discharged Williams as his representative on June 4, 2004, and in a petition dated December 31, 2004, asked the Board to set aside the partial C & R based on fraud, duress, or misrepresentation.

In his petition Smith alleged that (1) he did not know the extent of his injuries when he signed the partial C & R, while CSK Auto's attorney and the insurance adjuster, Susan Kosinski, did and (2) CSK Auto was not paying Smith's medical bills as promised. Smith later added other reasons to rescind the partial C & R. Among the theories he advanced to set the agreement aside were (1) collusion between Williams and the opposing party; (2) failure to file all medical records as required by regulation; (3) misrepresentations to the Board about the identity of his treating physician; (4) threats to refuse the IDET procedure if Smith did not agree to the settlement; (5) delay in notification that the IDET procedure had been approved as evidence that CSK Auto was using the procedure as leverage to make him sign the agreement; (6) the Board's failure to order an impartial medical examination; and (7) a violation of his due process rights because he did not appear before the Board prior to approval of the partial C & R.

The Board held a hearing on Smith's petition to set aside the partial C & R on February 16, 2006. Smith represented himself. Smith and his brother testified on Smith's behalf. Williams and Kosinski testified on behalf of CSK Auto. Smith testified that he was not getting the benefit of his bargain with CSK Auto because he was no longer getting medical benefits. According to Smith, the IDET procedure failed, and he now had other spinal problems that would cost over $200,000 to treat. Because of CSK Auto's controversion of his medical care, he was unable to get needed treatment. Smith also testified that the adjuster sometimes changed her mind or controverted treatment. Smith alleged that Williams told him he would not have the IDET procedure done unless he signed the partial C & R. Smith stated that he noticed when he signed the partial C & R that not all of the medical records had been submitted to the Board, but he said he did not object because he would not have had the IDET procedure unless he signed the agreement. Smith admitted that he had scheduled the IDET pro-

cedure with his physician before he signed the partial C & R, but he said that he did not know the procedure had been preauthorized.

Williams testified that she discussed CSK Auto's initial settlement offer of $7,500 with Smith and that she and Smith discussed making a counteroffer, ending up with a figure of $10,000. She stated that she also discussed CSK Auto's response to the counteroffer with Smith. Williams indicated she told Smith that she was unwilling to represent him at a hearing on the reemployment benefits appeal and advised him that he had little chance of prevailing in the appeal; she said that she only became involved in Smith's case to try to help him settle it. She testified that she discussed the waiver of PTD and reemployment benefits with Smith and that he voiced no concerns about missing medical records. Williams also testified that she believed Smith was aware before he signed the partial C & R that the IDET procedure had been approved.

Kosinski testified that Smith was receiving medical and TTD benefits during negotiations and that she never told Smith that the IDET procedure was contingent on his signing the partial C & R. She also testified that she approved the IDET procedure the day after Smith's physician requested it but did not tell Smith that it was approved because normally she left it up to the doctor to contact the patient and schedule the procedure. She said that when a workers' compensation claimant is represented, it is not her practice to communicate directly with the claimant. She indicated that Smith contacted her on October 7 about making travel arrangements for the IDET procedure and that she made them on October 14. Kosinski denied having told Williams or Smith that Smith would not get medical treatment if he did not sign the partial C & R. She also denied having refused to approve a medical procedure for Smith.

In its March 2006 decision on the petition, the Board refused to set aside the partial C & R. The Board first stated that a C & R can only be set aside because of fraud or duress on the part of the employer; Smith's complaints about Williams misleading him were therefore irrelevant to the issue whether the agreement should be set aside. The Board found that Smith was not credible when he testified that he did not understand the terms of the partial C & R, but that even if he did not understand it, his misunderstanding could not be a basis for setting it aside. The Board found no credible, specific evidence of misrepresentation, fraud, or duress on the part of CSK Auto to coerce Smith to sign the agreement. It held that Smith's current lack of medical benefits was not a reason to set aside the partial C & R because medical benefits were not affected by it. Finally, with respect to Smith's argument that the partial C & R should be voided because CSK Auto did not attach all of Smith's medical records,[3] the Board found that "all the available relevant medical reports at the time of the C & R were already filed with medical summaries."

Smith petitioned for reconsideration of the decision. He argued that listing Dr. Klimow as his treating physician in the partial C & R was misleading and that all of Dr. Klimow's recommendations and her PPI rating were "voided" by his change of physician. He alleged that his due process rights were violated because the Board did not permit him to appear at a hearing before approving the partial C & R and claimed that Kosinski was "playing games" with him "by turning on and off his benefits." He maintained that the Board should not have approved the partial C & R before the IDET procedure. He also alleged that Williams had defrauded him of the settlement money and complained that he was "rushed into signing" the settlement before the IDET procedure and never intended to give up PTD benefits. The Board denied reconsideration.

Smith appealed to the Alaska Workers' Compensation Appeals Commission, which affirmed the Board, holding that the Board "applied the proper legal standards and its findings are supported by substantial evidence in light of the whole record." The

---

**3.** 8 Alaska Administrative Code (AAC) 45.160(c)(1) (2004) requires that a settlement agreement "be accompanied by all medical reports in the parties' possession," except for medical records that have already been filed.

Commission did not discuss the legal standard for setting aside a C & R except to say that it agreed "the board was not required to set the agreement aside under *Olsen Logging Co. v. Lawson.*"[4] The Commission determined that substantial evidence in the record supported the Board's findings that (1) the settlement was plain and unambiguous; (2) Smith was able to read and understand the partial C & R when he signed it; and (3) there was no evidence of misrepresentation, fraud, or duress by the employer.

Smith appeals.

## III.  STANDARD OF REVIEW

■ In this case, we elaborate on *Barrington v. Alaska Communications Systems Group, Inc.*[5] and the standard of review in appeals from the Alaska Workers' Compensation Appeals Commission. The legal questions presented here are issues of law involving no agency expertise, so we apply our independent judgment to those questions and review the decision of the Commission.[6]

■ But here we must also review factual findings. The Commission is required to review the factual findings of the Board using the substantial evidence test[7] and is bound by the Board's findings about the credibility of witnesses.[8] It may not accept new or additional evidence related to an appeal except in limited circumstances.[9] In this case, the Commission did not make factual findings but reviewed the Board's factual findings for substantial evidence. Because the Commission's decision is the final administrative action in a workers' compensation case,[10] we independently review the Commission's legal conclusion that the Board's factual findings were supported by substantial evidence. This necessarily requires us to independently review the record and the Board's factual findings. When we review the Commission's legal conclusions about the Board's exercise of discretion or legal rulings, we also independently assess the Board's rulings and in so doing apply the appropriate standard of review. Substantial evidence to support factual findings is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11]

## IV.  DISCUSSION

Smith seeks to set aside the partial C & R on a number of grounds, including fraud, duress, and mistake of fact. As part of his fraud claim, he asserts that the settlement should be set aside because his non-attorney representative breached her duty to him. He also argues that he was denied due process because he did not appear at the hearing before approval of the partial C & R and that the Board failed to follow its regulations in approving it. We address each contention in turn.

### A.  Mistake of Fact

■ Smith first argues that the partial C & R should be set aside because of a mistake of fact, relying on *Witt v. Watkins.*[12] *Witt* held that a personal injury settlement could be set aside because of a mistake of fact; the test set out was "whether, at the time of signing the release, the releasor intended to discharge the disability which was subsequently discovered."[13] But as the Commission recognized, we decided in *Olsen Logging Co. v. Lawson* that the Alaska

---

4.  856 P.2d 1155 (Alaska 1993) (holding that mistake of fact cannot be a basis to set aside a workers' compensation settlement agreement).

5.  198 P.3d 1122 (Alaska 2008).

6.  *Id.* at 1125. We independently review whether a regulation applies to a case. *Garner v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance,* 63 P.3d 264, 267 (Alaska 2003).

7.  AS 23.30.128(b).

8.  AS 23.30.122, .128(b).

9.  AS 23.30.128(a), (c).

10.  *Barrington,* 198 P.3d at 1125 (citing AS 23.30.008(a); *Alaska Pub. Interest Research Group v. State,* 167 P.3d 27, 41, 45 (Alaska 2007)).

11.  *DeYonge v. NANA/Marriott,* 1 P.3d 90, 94 (Alaska 2000) (quoting *Grove v. Alaska Constr. & Erectors,* 948 P.2d 454, 456 (Alaska 1997)).

12.  579 P.2d 1065 (Alaska 1978).

13.  *Id.* at 1068–69, 1071 n. 18.

Workers' Compensation Act does not permit workers' compensation settlement agreements to be set aside because of unilateral or mutual mistake.[14] Smith's arguments that the partial C & R should be set aside because he did not know the extent of his disability or that the IDET procedure would fail are both arguments related to mistake[15] and, under *Olsen Logging Co.*, cannot serve as a basis to set aside the partial C & R. Additionally, the partial C & R stated that the extent of Smith's disability "may not fully be known at this time" and that the disability "may be continuing and progressive in nature." Smith released liability for "as yet undiscovered disabilities, injuries or damages" associated with his condition. The Board found that Smith's assertion that he did not understand the terms of the settlement was not credible. This credibility determination is binding for any review of the Board's factual findings.[16]

■ Smith's assertions that the Board should have determined his earning capacity and that he never intended to give up his PTD benefits are also related to mistake because they are both based on his assertion that the back injury was worse than he expected. According to Smith, the Board should have considered that the IDET procedure failed to help him and that he is now permanently and totally disabled. Although Smith may have been mistaken in his belief that the IDET procedure would resolve his back pain, his mistake cannot serve as a basis for avoiding the partial settlement. Likewise, even if Smith showed that he never intended to give up his PTD benefits, that showing could not serve to set aside the partial C & R. The Commission was correct in holding that under *Olsen Logging Co. v. Lawson*, a workers' compensation settlement agreement cannot be set aside because of mistake.

## B. Misrepresentation and Fraud

■ Smith also seeks to set aside the partial C & R because of fraud. The Board refused to do so, finding "no credible, specific evidence of misrepresentation or fraud or duress by the employer to coerce the employee to sign the C & R." Here, Smith argues that CSK Auto misrepresented who his treating physician was in the partial C & R, that this misrepresentation was material, and that he relied on the misrepresentation. CSK Auto responds that the Commission was correct in concluding that substantial evidence in the record supported the Board's findings about misrepresentation and fraud.

We have held that in a workers' compensation case, an employee is required to show the following to avoid a settlement based on misrepresentation: "(1) a misrepresentation; (2) which was fraudulent or material; (3) which induced the party to enter into the contract; (4) upon which the party was justified in relying." [17]

In the section of the partial C & R setting out the parties' dispute, CSK Auto stated, "On November 14, 2001, Dr. Klimow, the employee's treating physician, approved the employee to return to [positions Smith had held in the ten years prior to his work-related injury]." The Board described the agreement as containing "an accurate, if sketchy, history of [Smith's] medical treatment"; the Board noted that Dr. Klimow was Smith's treating physician in November 2001 and that the partial C & R showed that Smith was being treated by Dr. Anderson as of June 2002.

■ We agree with the Commission that substantial evidence in the record supports the Board's conclusion that this statement was not a misrepresentation. A misrepresentation is a statement that is not in accord with the facts.[18] As the Board noted, Dr. Klimow was Smith's treating physician on November 14, 2001, when she indicated that

---

**14.** 856 P.2d 1155, 1159 (Alaska 1993).

**15.** *See Witt*, 579 P.2d at 1069 (describing types of mistake).

**16.** AS 23.30.122, .128(b).

**17.** *Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079, 1094 (Alaska 2008) (emphasis omitted) (citing *Bering Straits Native Corp. v. Birklid*, 739 P.2d 767, 768 (Alaska 1987)).

**18.** Restatement (Second) of Contracts § 159 (1981).

he could return to work he had previously done. But even if the statement were a misrepresentation—that is, if "treating physician" meant "current treating physician"—Smith could not have justifiably relied on it because he knew when he signed the agreement that Dr. Klimow was not his treating physician.[19] Not only does the partial C & R itself state that Dr. Anderson was treating Smith in June 2002, Smith listed only Dr. Pierson as his treating physician on his workers' compensation claim form, and he wrote to Dr. Anderson about the IDET procedure at the time he signed the partial C & R.

Smith also alleges that Williams withheld information about PTD benefits or failed to inform him about them and claims that she misrepresented herself and breached a fiduciary duty to him in her representation of him in the proceeding. The Board made no findings related to these allegations, stating, "Whether or not there is any basis for the employee's assertions that Ms. Williams represented him inappropriately, those assertions are irrelevant." The Commission concurred. We agree with the Commission and the Board—in order for one party to avoid a contract on grounds of misrepresentation, the misrepresentation must be made by the other party to the contract.[20] Williams was not a party to the contract, nor was she a representative of CSK Auto, so any representation she made cannot be a reason to avoid the partial C & R.

## C. Duress

Smith argues that the partial C & R should be set aside because of duress. He asserts that the insurance adjuster both withheld the information that she had approved the IDET procedure and failed to make travel arrangements for the procedure until after he had signed the settlement agreement. He also says that he was "put under duress" by Williams, claiming that she threatened to withdraw from representing him unless he signed the partial C & R. The Board concluded that there was no evidence of duress. It found that the adjuster preauthorized the procedure by calling Smith's doctor on or about September 11, 2002 and that she never withdrew or threatened to withdraw the approval. It further found that Smith received compensation throughout the negotiation process. It determined that Smith's allegations about Williams were "irrelevant." The Commission decided that substantial evidence in the record supported the Board's findings.

We agree with the Commission that substantial evidence in the record supports the Board's finding that there was no duress by CSK Auto. The adjuster's testimony and the written records support the finding that the IDET procedure was authorized before Smith signed the partial C & R. The compensation reports and the adjuster's testimony show that Smith received benefits throughout the negotiations.[21] The Board's finding that CSK Auto never withdrew or threatened to withdraw its approval of the IDET procedure is supported by the adjuster's testimony that she never told Smith or Williams that Smith would not get medical treatment if he did not sign the partial C & R.[22]

## D. Interference with Contractual Benefits

Smith contends that the partial C & R should be set aside because he is not getting the benefit of his bargain. Relying on Kaiser v. Royal Insurance Co. of America,[23] he argues that CSK Auto violated the covenant

---

19. See id. § 172 cmt. b (noting that when recipient knows that assertion is false, reliance is "clearly not justified").

20. Indus. Commercial Elec., Inc. v. McLees, 101 P.3d 593, 598 (Alaska 2004) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 164 (1981)).

21. The record reflects that Smith continued to receive TTD benefits through February 19, 2003, about four months after the Board approved the partial C & R.

22. As with Smith's misrepresentation and fraud claims, the Board and Commission correctly determined that any actions or statements by Williams cannot be attributed to CSK Auto and thus cannot serve as a basis for setting aside the agreement due to duress.

23. 89 P.3d 740 (Alaska 2004).

of good faith and fair dealing by taking "direct action" to deprive him of the benefit of the partial C & R. His argument is based on the current lack of medical treatment for his back.

An implied covenant of good faith and fair dealing exists in all contracts; it requires that each party refrain from doing anything that would injure the right of the other party to receive the benefits of the contract.[24] But medical care was not one of the benefits that Smith received from the partial C & R; in fact, Smith's medical care was not affected by the partial C & R at all. Smith preserved his right to get medical and other benefits not specifically waived in the partial C & R, and CSK Auto reserved the right to controvert future medical care.[25] Both the Board and the Commission correctly interpreted the partial C & R to apply only to vocational reemployment and permanent total disability benefits.

### E.  Regulatory Violations

Smith maintains that the partial C & R did not comply with the regulatory requirements of 8 AAC 45.160 in that not all of his medical records were submitted with the agreement.[26] He also argues that the partial C & R should be set aside because he did not have the opportunity to appear at the hearing before the Board approved the partial C & R and because the Board did not order an independent medical examination pursuant to AS 23.30.012. He additionally contends that

the Board violated his due process rights in conducting the hearing without him. Finally, Smith insists that the Board should not have approved the partial C & R before the IDET procedure because he was not medically stable and did not know the extent of his disabilities when he signed the partial C & R.

When it considered Smith's request to set aside the partial C & R, the Board mistakenly believed that no hearing had been held before approval of the settlement and rejected Smith's due process claim, deciding that the Alaska Workers' Compensation Act does not require a hearing before approval of a settlement and finding that no one had requested a hearing on the settlement in Smith's case.[27] The Board relied on AS 23.30.012 in concluding that no hearing was required. We agree with the Board that neither a hearing nor an impartial medical examination is required by this section of the statute: the Board has the discretion to order a medical examination or to hold a hearing, but it is not required to do so.[28] But AS 23.30.110(c) required the parties to appear at the scheduled hearing because they entered into the settlement only one week before the originally scheduled hearing date of October 17, 2002.[29] Smith's non-attorney representative attended the hearing, but Smith did not. His absence is unexplained.[30]

The Board found at the conclusion of the October 2002 hearing that the partial C & R "appear[ed] to be" in Smith's

---

24.  *Id.* at 742 (citing *Ramsey v. City of Sand Point,* 936 P.2d 126, 133 (Alaska 1997)).

25.  Smith filed written claims for medical and TTD benefits in August 2003 and December 2004.

26.  8 AAC 45.160(c)(1) requires that every settlement "be accompanied by all medical reports in the parties' possession, except that, if a medical summary has been filed, only those medical reports not listed on the summary must accompany the agreed-upon settlement."

27.  The Board indicated in its decision that it had not held a hearing before approving the partial C & R. In fact, CSK Auto's attorney and Smith's non-attorney representative appeared at the scheduled hearing time on October 17, 2002, to request Board approval of the partial C & R. After oral argument before us, CSK Auto's attor-

ney supplemented the record with a transcript of the 2002 hearing. Smith was not at the Board hearing. The record does not explain his absence.

28.  *Seybert v. Cominco Alaska Exploration,* 182 P.3d 1079, 1091 (Alaska 2008).

29.  AS 23.30.110(c) states in part, "If a settlement agreement is reached by the parties less than 14 days before the hearing, the parties shall appear at the time of the scheduled hearing to state the terms of the settlement agreement." 8 AAC 45.070(d) implements this statutory provision.

30.  Smith's representative stated at the hearing that she believed he was unavailable because he was undergoing the IDET procedure. Smith underwent the IDET procedure on October 30, 2002.

best interest, but it is not clear from the record whether the Board applied the correct subsection of its regulation when it examined the settlement.[31] The Board was required to determine whether the settlement was in Smith's best interest: Board regulations generally prescribe Board review of settlement agreements as well as a finding that the agreement is in the employee's best interest.[32] In Smith's case, however, the Board needed to make a more searching inquiry. When an employee waives permanent benefits before medical stability and rating, a Board regulation, 8 AAC 45.160(e), creates a presumption that the settlement is not in the employee's best interest, and the Board cannot approve the settlement unless there is a showing that waiver of these benefits is in the employee's best interest.

8 AAC 45.160(e) provides:

An agreed settlement in which the employee waives medical benefits, temporary or permanent benefits before the employee's condition is medically stable and the degree of impairment is rated, or benefits during rehabilitation training after the employee has been found eligible for benefits under AS 23.30.041(g) is presumed not in the employee's best interest, and will not be approved absent a showing by a preponderance of the evidence that the waiver is in the employee's best interest....

■■■ This regulation affords protection to employees. Because the parties to a workers' compensation settlement agreement cannot later avoid an agreement when they are mistaken about the extent of the employee's injury,[33] the regulation effectively requires the parties either to delay settlement

until the employee has a clearer idea of the extent of his disability or to produce affirmative evidence that waiver is in the employee's interest. We conclude that 8 AAC 45.160(e) applied in Smith's case because he was not medically stable when the partial C & R was filed with the Board and that the Board erred as a matter of law by ignoring this regulation when it approved the partial C & R.

■■ Smith relied on 8 AAC 45.160 before the Board and the Commission, as well as before this court, insisting throughout the proceedings that the Board erred in approving the partial C & R before he had the IDET procedure, while he was still being treated for his work-related injury. Although he did not specifically reference subsection (e) of 8 AAC 45.160, Smith did raise the issue that he was not medically stable when the partial C & R was signed at the Board hearing, in his briefing before the Commission, and again in his briefing before us. And in pleadings before the Board, Smith complained that the Board chairman "did not state what was the best interest of the employee during a C & R hearing." At oral argument before us, he stated that the Board, in approving the partial C & R before the IDET procedure, did not protect him. Because we treat pleadings of pro se litigants less stringently than those of lawyers, we conclude that Smith adequately raised the issue that we decide here.[34]

■■ Here, the partial C & R was equivocal at best in addressing Smith's medical stability.[35] It noted that Dr. Klimow had found him medically stable in August 2001 but also showed that Smith was getting TTD

---

31. Whether a regulation applies to a case is a legal question that we independently review. *Garner v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance*, 63 P.3d 264, 267 (Alaska 2003).

32. 8 AAC 45.160(a). AS 23.30.012(b) currently requires Board review of settlements when an employee is not represented by counsel licensed to practice law in Alaska. This provision was not in effect when Smith signed his settlement agreement. Ch. 10, § 10, FSSLA 2005.

33. *Olsen Logging Co. v. Lawson*, 856 P.2d 1155, 1159 (Alaska 1993).

34. *See DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005) (citing *Smith v. Sampson*, 816 P.2d 902, 906 (Alaska 1991); *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 993 P.2d 1018, 1022 (Alaska 1999)) (concluding that pro se complaints encompassed discrimination claim even though they did not refer to anti-discrimination statute).

35. Medical stability is "the date after which further objectively measurable improvement from the effects of the compensable injury is not reasonably expected to result from additional medical care or treatment." AS 23.30.395(27).

benefits and that his TTD benefits were "continuing." [36] At the hearing to approve the partial C & R, counsel for CSK Auto mentioned both that Dr. Klimow had rated Smith in 2001 and that Smith was still receiving TTD benefits. The summary form that accompanied the partial C & R noted Dr. Klimow's five percent whole person impairment rating from 2001. But CSK Auto had accepted that Smith was not—and had never been—medically stable in July 2002 when it reclassified *all* of his PPI benefits as TTD benefits. In March 2002 Smith's treating physician, Dr. Anderson, had recommended that Smith undergo an IDET procedure to relieve his back pain. In July 2002 the adjuster contacted Dr. Klimow, who agreed that Smith might benefit from the procedure. The adjuster then noted, "We now have no dispute as to stationary date as the initial doctor agrees with the IDET." Because there was no factual dispute, we conclude that Smith was not medically stable when he signed the partial C & R. Because Smith was not medically stable and the agreement waived PTD benefits, this partial settlement was presumed not to be in his best interest and could not be approved absent a showing by a preponderance of the evidence that Smith's waiver of permanent total disability benefits was in his best interest.[37]

The Board has interpreted its regulation as requiring some evidence that the settlement is in the employee's best interest.[38] Generally, the Board considers the employee's testimony in reaching a decision

about his best interest.[39] Here, the Board did not identify what evidence, if any, overcame the presumption that the partial C & R was not in Smith's best interest. It is not clear from the transcript whether the Board considered Smith medically stable when it approved the partial C & R. The Board did not ask Smith's representative what evidence might overcome the presumption that the settlement was not in Smith's best interest; it simply inquired whether she discussed with Smith the difficulties in overturning workers' compensation settlements. The Board could not question Smith about the partial C & R because he was not there. In the partial C & R, Smith gave up rights to both reemployment and PTD benefits in exchange for $10,000. At oral argument before us, counsel for CSK Auto conceded that if Smith were permanently and totally disabled as a result of his injury, his claim could perhaps be worth hundreds of thousands of dollars. The Board did not identify any evidence that might have overcome the presumption that waiver of PTD benefits before medical stability was not in Smith's interest.

We are troubled by the Board's ready approval of the agreement in the absence of testimony from Smith, particularly in light of the fact that the Board had incomplete medical records before it when it approved the agreement.[40] While failure to submit complete medical records might not be reversible error in all cases,[41] here it underscores the Board's lack of a complete

---

**36.** Eligibility for TTD benefits ends when the employee becomes medically stable. AS 23.30.185.

**37.** 8 AAC 45.160(e).

**38.** *See, e.g., Perkins v. Trident Seafoods Corp.,* AWCB Decision No. 06–0189 at 7 (July 13, 2006). It has also construed the workers' compensation statute as imposing an affirmative duty on the Board to determine the rights of the parties. *Id.*

**39.** *Id.* (citing *Kline v. Swansons,* AWCB Decision No. 00–0094 at 4 (May 11, 2000)) (noting that while an employee's belief is not controlling, the Board considers it in making a decision).

**40.** Our review of the record confirms Smith's assertion that not all medical records in the

adjuster's possession were submitted to the Board before approval of the partial C & R. The last medical summaries filed before the hearing only listed medical records through June 25, 2002. Yet the record shows that the adjuster had medical records from August and September 2002, including notes from a lumbar discography, before the settlement was filed with the Board. The Board stated in its decision on Smith's petition to set aside the partial C & R that all of the "relevant" medical records had been filed with medical summaries before approval of the agreement. The Board decision does not explain why the omitted medical records were not relevant.

**41.** *Cf. Irvine v. Glacier Gen. Constr.,* 984 P.2d 1103, 1108 (Alaska 1999) (holding that error in failing to consider physician's view was harmless).

record before approval of the agreement, when the agreement was presumed not to be in Smith's interest. Moreover, the partial C & R contained only two statements about Smith's best interest: an assertion that the parties believed the settlement was "in the best interest of the employee" and a statement that "the employee" believed the partial C & R represented "a fair and equitable settlement of this matter in his best interests." These boilerplate assertions are inadequate to overcome a presumption that waiver of PTD benefits was not in Smith's best interest.

■ The Board's failure to follow its own regulation regarding settlement of claims before medical stability, its holding the hearing in Smith's absence, together with the waiver of a benefit with potentially significant value, convince us that the Board's action in approving the settlement, and later failing to set it aside, was an abuse of discretion.[42] The Commission erred as a matter of law in affirming the Board's order.[43]

## V. CONCLUSION

For the reasons set out above, we REVERSE the decisions of the Board and the Commission and REMAND to the Commission with instructions to remand to the Board for further proceedings consistent with this opinion.

---

**42.** See Garner v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance, 63 P.3d 264, 269 (Alaska 2003) (holding that agency abused its discretion in failing to consider applicability of regulation to case). Because we reverse the Board on other grounds, we do not need to reach Smith's due process claim.

**43.** See Irvine, 984 P.2d at 1107 (holding that Board committed legal error in affirming reemployment decision where RBA abused his discretion by not following statute).