*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska, 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HUGO ROSALES, | ) | |
| | ) | Supreme Court No. S-14855 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| | ) | Appeals Commission No. 11-007 |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ICICLE SEAFOODS, INC. and | ) | No. 6819 - September 6, 2013 |
| SEABRIGHT INSURANCE CO., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission, Laurence Keyes, Commission Chair.

Appearances: Hugo Rosales, pro se, Somerton, Arizona, Appellant. Lanning Trueb and Richard Nielson, Nielsen Shields, PLLC, Seattle, Washington, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

After suffering a work-related injury, a worker on a fish-processing vessel filed both a workers' compensation claim and a maritime lawsuit; he was represented by counsel in both proceedings. The worker and his employer entered into a global

settlement of both cases. The Alaska Workers' Compensation Board initially rejected the settlement. The employee later tried to withdraw from the settlement but changed his mind and, at a hearing, testified that he thought the settlement was in his best interests. The Board approved the settlement after this hearing. Several months later, the employee asked the Board to set the agreement aside. The Board denied the request, and the Alaska Workers' Compensation Appeals Commission affirmed the Board's decision. Because we find no error in the Commission's decision, we affirm it.

## II. FACTS AND PROCEEDINGS

In May 2007, shortly after Hugo Rosales began working for Icicle Seafoods on a fish-processing vessel in Bristol Bay, a tray of frozen fish weighing about 54 pounds fell from a cart he was pushing and hit him on the back of the head. Rosales suffered a cut on his head and reported losing consciousness. He received medical treatment on the ship and worked a few more days. He was seen at the Dillingham hospital on May 16. The doctor there diagnosed whiplash and a history of concussion, and limited Rosales to light duty work for several days. Rather than go back to the vessel Rosales returned to his home in Arizona for another medical opinion. He later filed a report of injury with the Alaska Workers' Compensation Board.

Upon his return to Arizona, Rosales sought medical care for persistent headaches as well as neck pain. The examining physician diagnosed a head injury; CT scans of Rosales's head and neck were mostly normal, but the neck scan showed degenerative disk disease at C4-C5. Rosales also reported foot pain in June 2007. A number of months after the accident, Rosales began to report lower back pain, which he stated began at the time of the accident.

Rosales, appearing pro se, filed a written workers' compensation claim in late October 2007, after Icicle filed a controversion of some benefits. He made claims for medical and transportation costs, penalty and interest, and unfair or frivolous

controversion. In response Icicle admitted a short period of temporary total disability (TTD) and some medical costs.

An attorney entered an appearance before the Board on behalf of Rosales in July 2008. The attorney also filed a maritime case against Icicle in King County Superior Court in Washington. Shortly before trial was scheduled to begin in the maritime litigation, the parties attended a mediation and agreed to settle all of Rosales's claims in a global settlement agreement. Under the terms of the agreement, Icicle paid Rosales $200,000 to settle all of his claims; of that amount, he received about $113,000, with the rest going to attorney's fees and costs. The vast majority of the settlement, including the attorney's fees, was related to the maritime case: according to the terms of the Board settlement, Icicle paid Rosales $195,000 when the documents were executed and was to pay him an additional $5,000 after the Board approved the settlement. As part of the workers' compensation settlement, Rosales waived both future medical benefits and reemployment benefits.

Not long after the settlement was submitted to the Board, and before it was approved, Rosales, acting pro se, filed a written workers' compensation claim seeking benefits. The claim was accompanied by a letter saying new evidence showed he was not medically stable. Rosales's attorney later withdrew this claim.

After reviewing the settlement, the Board rejected it because the Board could not determine whether it was in Rosales's best interests. In particular, the Board pointed out that Rosales was waiving medical benefits even though he appeared to have "work-related foot problems." The Board requested a copy of the maritime settlement and invited the parties to schedule a hearing about the workers' compensation settlement. In early January 2010, Rosales's attorney submitted a copy of the release of claims from the maritime case.

The first board hearing on the settlement took place on February 2, 2010. When asked about medical care, Rosales testified that he saw the doctor once a month for follow-up and to get prescriptions. In the course of the hearing, Rosales asked for more time to consider the settlement; the Board granted this request. Following the hearing, Icicle sent a letter to Rosales's attorney claiming that Rosales was in breach of the agreement because he was not cooperating in getting Board approval. Icicle requested return of the $195,000 it had already paid or "an affirmative statement from Mr. Rosales that he does want the Board to approve the settlement." Icicle told the attorney that if it did not receive either the statement or the money by February 7, it would "take legal steps to protect its interest in the $195,000 paid to date."

The Board held a second hearing on the settlement on February 23, 2010. At this hearing Rosales testified that he wanted the Board to approve the settlement; that he understood he would not receive any more workers' compensation benefits, including future medical benefits; and that he understood it was "virtually impossible" to set the agreement aside. He further testified that he thought the settlement was in his best interests because he was getting enough money to pay for his medical treatment and retraining. The Board found the settlement was in Rosales's best interests and approved it.

On October 4, 2010, Rosales asked the Board to modify the settlement. He sought a variety of benefits including permanent partial impairment (PPI) and temporary total disability (TTD). To support the modification request, Rosales alleged that the Board had incomplete medical information because not all of his medical records had been submitted to the Board.[1] Additional reasons he gave for modifying the settlement

---

[1]    Rosales alleged that neither his attorney nor Icicle's had submitted reports from Kent Shafer, a vocational expert; Arthur Ginsberg, M.D.; and Theodore Becker,
(continued...)

were that (1) he had not been evaluated for PPI; (2) the Board had not approved the attorney's fees paid to his attorney; (3) the employer had failed to pay him a penalty or interest for the TTD it paid late; and (4) he had been required to work after the injury because the employer was "short of workers," not because he was well or able to work. Icicle opposed modification.

Rosales then filed a written claim for permanent total disability (PTD) from the date of injury. Relying on the settlement agreement, Icicle denied the PTD claim and petitioned the Board to dismiss Rosales's modification request. During several prehearing conferences, the Board gave Rosales information about the difficulty of overturning a settlement. It then scheduled a hearing to consider his claim.

After the hearing the Board decided there was no basis on which to set aside the settlement. The Board found that most of the medical records Rosales alleged were missing were in fact in the file and had been in the possession of his attorney, not Icicle's attorney.[2] It found that there had been no misrepresentation or duress. The Board found that Rosales was "not credible in his assertions he was not properly informed about the settlement or the benefits he was waiving, and he felt coerced or under duress when he testified to the board he wanted the workers' compensation settlement approved."

Rosales first asked for reconsideration, but the Board considered his request untimely. Rosales then appealed to the Alaska Workers' Compensation Appeals

---

[1]      (...continued)
Ph.D. to the Board.

[2]      Most of the records Rosales identified as missing were reports from experts his attorney had retained in the maritime litigation; they included both medical and vocational reports. Besides the records mentioned in his request for modification, Rosales additionally argued that records from another doctor (Dr. Feldman) and from his foot surgery were not submitted to the Board before the settlement was approved.

Commission, which decided that substantial evidence in the record supported the Board's decision. Rosales appeals.

## III.   DISCUSSION

### A.   Standard Of Review

In a workers' compensation appeal, we review the Commission's decision.[3] We apply our independent judgment to questions of law that do not involve agency expertise.[4] We independently review the Commission's legal conclusion that substantial evidence in the record supports the Board's factual findings, which requires us to independently review the record and findings.[5] "The Board is required to make findings only about questions that are both contested and material."[6] "Whether the Board made adequate findings is a question of law that we review de novo."[7]

A workers' compensation settlement acts like a board award, except that it is more difficult to set aside.[8] A workers' compensation settlement agreement is a contract, so the common law of contracts applies to workers' compensation settlements "to the extent these standards are not overridden by statute."[9] Once the parties enter into

---

[3]    *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

[4]    *Barrington*, 198 P.3d at 1125.

[5]    *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

[6]    *Rivera v. Wal-Mart Stores, Inc.*, 247 P.3d 957, 962 (Alaska 2011) (citing *Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1275 (Alaska 1999)).

[7]    *Id.* (citing *Leigh v. Seekins Ford*, 136 P.3d 214, 216 (Alaska 2006)).

[8]    *Olsen Logging Co. v. Lawson*, 856 P.2d 1155, 1158 (Alaska 1993).

[9]    *Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079, 1093 (Alaska 2008) (citations omitted).

a settlement agreement, the agreement cannot be modified or set aside because of unilateral or mutual mistake.[10]  A workers' compensation settlement agreement can be set aside due to misrepresentation.[11]

### B.     The Board Had Jurisdiction To Approve The Settlement.

Rosales argues that the Board did not have jurisdiction to approve the settlement because the global settlement included both his maritime claim and his workers' compensation claim, and the Board does not have jurisdiction over maritime claims.  Icicle responds that the Board only approved the settlement of the workers' compensation claim and was thus acting within its jurisdiction.  The Commission decided that Rosales's position on this issue had no merit.

Ordinarily, a claim under the Alaska Workers' Compensation Act is the exclusive remedy for an employee's injury.[12]  The Act's exclusive remedy provision, AS 23.30.055, does not deprive a maritime employee of his federal remedies.[13]  However, an employee is not entitled to a double recovery; the amounts awarded on one claim offset the recovery in the other.[14]

The parties here executed two separate documents, one for each case; they presented only the workers' compensation settlement to the Board for approval.  The Board asked to see a copy of the maritime settlement to assist it in evaluating whether the workers' compensation settlement was in Rosales's best interests.  The Board took no action to approve or enforce the maritime settlement, which would have been beyond its

---

[10]    *Olsen Logging Co.*, 856 P.2d at 1159.

[11]    *Seybert*, 182 P.3d at 1093-94 (citations omitted).

[12]    AS 23.30.055.

[13]    *State, Dep't of Pub. Safety v. Brown*, 794 P.2d 108, 110 (Alaska 1990).

[14]    *Barber v. New England Fish Co.*, 510 P.2d 806, 813 n.39 (Alaska 1973).

jurisdiction. But the Board had jurisdiction both to determine that the workers' compensation settlement was in Rosales's best interest and to approve the settlement.[15]

Rosales cites *Gunter v. Kathy-O-Estates*[16] and the Commission's decision in *Reeder v. Municipality of Anchorage*[17] to support his argument that the Board lacked jurisdiction to approve the settlement. Both cases are distinguishable. In *Gunter* a disabled worker asked the Board to order his employer to reimburse him for damages, such as the cost of court-ordered alcohol treatment, that he believed stemmed from his work-related injury.[18] We held that the Board could only order reimbursement "if [Gunter's] claims were compensable under the act," which they were not.[19] Here the Board only approved a settlement of Rosales's workers' compensation claim; it did not approve or otherwise exercise jurisdiction over his maritime claim. The Board considered the maritime settlement solely because the amount paid in the maritime case could offset future payments in the workers' compensation case.[20] The Board weighed the amount of the offset in deciding whether the settlement was in Rosales's best interests.

*Reeder* also presented a distinguishable issue. In *Reeder* a police officer asked the Board to construe a settlement agreement in his workers' compensation case as including an agreement about injury leave, a benefit he received under his union's

---

[15]     AS 23.30.012.

[16]     87 P.3d 65 (Alaska 2004).

[17]     AWCAC Dec. No. 116 (Sept. 28, 2009), *available at* http://labor.alaska.gov/wccomm/memos-finals/D_116.pdf.

[18]     *Gunter*, 87 P.3d at 69.

[19]     *Id.* at 69-70.

[20]     In the workers' compensation settlement, Rosales agreed that Icicle had "paid all compensation and medical benefits which [were] due as of the date" he signed the settlement.

contract with the Municipality.[21]  The Commission decided that the Board did not have jurisdiction over injury leave, so that benefit could not have been included in the benefits settled as part of the workers' compensation settlement, and the Board could not order the Municipality to stop withholding overpaid injury leave.[22]

Rosales cites no authority for his argument that there cannot be a global settlement of claims.  We have held that an employee may pursue both maritime and workers' compensation claims, but we said that the employee was "not to be permitted double recovery" and instructed that his employer could recoup any workers' compensation benefits already paid if the employee was successful in his maritime suit.[23] When two claims are interrelated, settlement of both claims is permissible.  We conclude that the Board acted within its jurisdiction in approving the workers' compensation settlement and that nothing prohibits a global settlement of related claims.

### C.    The Commission Correctly Concluded That The Absence Of Medical Records Was Not Reversible Error.

Relying on *Smith v. CSK Auto, Inc.*,[24] Rosales contends that the Commission erred in concluding that the absence of some medical records from his file at the time of approval was not reversible error.[25]  The Commission noted that records

---

[21]    *Reeder*, AWCAC Dec. No. 116 at 2-3, 11.

[22]    *Id.* at 13-14, 20.

[23]    *Barber v. New England Fish Co.*, 510 P.2d 806, 813 n.39 (Alaska 1973).

[24]    204 P.3d 1001 (Alaska 2009).

[25]    Rosales argues that the Commission made a factual error by identifying only the foot-surgery records as missing; he insists that "[t]he medical records of Drs. Ginsber[g], Becker, Feldman, and vocational rehabilitation specialist Mr. Shafer were missing too" because the Board did not "mention these records in the two hearings before it approved" the settlement.  Rosales testified he had submitted records from Ginsberg,

(continued...)

related to Rosales's foot surgery had not been submitted to the Board until after the settlement was approved, but it did not consider their omission reversible error because the records "expressed no opinion about whether Rosales was likely to need medical treatment in the future for his left foot condition, much less any opinion on whether such treatment was related to the 2007 work accident."

In *Smith* the Board and Commission refused to set aside a settlement; we reversed because the Board had not followed its own regulations when it approved the settlement.[26] We agree with the Commission that *Smith* is distinguishable. The absence of medical records was only one factor we considered in *Smith*: Smith did not attend the hearing about the settlement, and the Board made no explicit findings about his best interests before approving a settlement for $10,000, yet all parties agreed Smith was not yet medically stable.[27] Here, in contrast, the Board held two hearings about whether the settlement was in Rosales's best interests; Rosales attended both and testified at the second hearing that he thought the settlement was in his best interests. He acknowledged he was giving up benefits, including medical benefits, but he nonetheless asked the Board to approve the settlement. Unlike Smith, Rosales was represented by counsel.[28]

---

[25]    (...continued)
Becker, and Shafer to the Board before the settlement was approved; copies of these medical reports are in the record along with the medical summary Rosales submitted at that time. The Commission did not mention Dr. Feldman's records in its decision. Copies of Dr. Feldman's chart notes and deposition are also in the record, but it is not clear when they were filed.

[26]    *Smith*, 204 P.3d at 1012-13.

[27]    *Id.* at 1010-12.

[28]    *Id.* at 1005.

While it appears that the foot-surgery records were not submitted to the Board until after the settlement was approved,[29] we said in *Smith* that "failure to submit complete medical records might not be reversible error in all cases."[30] The medical records regulation ensures that the Board has as much current information as possible when assessing a settlement agreement to see if it is in the employee's best interests. We have independently reviewed the foot-surgery records and agree with the Commission that these records were not so important to the Board's understanding of Rosales's best interests that their omission was reversible error. The records do not connect Rosales's foot complaints to his work injury, nor do they indicate that Rosales would need continuing treatment for his foot. To the contrary, these medical records show that Rosales was recovering well from surgery.

Rosales additionally argues that the foot-surgery records and Dr. Feldman's deposition showed he was not medically stable at the time of the settlement. When an employee enters into a settlement waiving certain benefits before medical stability, the agreement is presumed not to be in his or her best interests, but the Board can still

---

[29]     Rosales faults Icicle for failing to submit medical records, but the Board's regulation requires *both* parties to file medical reports. *See* 8 Alaska Administrative Code (AAC) 45.052(d) (2012) (requiring all parties to file updated medical summaries with Board, along with copies of medical reports, within five days of getting medical reports). Nothing in the record indicates that Icicle had the foot-surgery records before the settlement. Some records Rosales discusses were reports generated in the maritime litigation for *his* attorney. The record does not explain why Rosales's attorney did not submit copies of these reports to the Board. As we noted earlier, the record does not reflect when Dr. Feldman's deposition or records were filed, but Dr. Feldman's deposition was taken by Rosales's attorney for the maritime case. Rosales does not point to anything requiring a party to file a deposition with the Board.

[30]     *Smith*, 204 P.3d at 1012.

approve the settlement if an employee shows that waiver is in his best interests.[31] Rosales agreed at the hearing on February 24, 2009, that he thought the settlement was in his best interests; he said the amount of money he was receiving would cover future medical treatment and rehabilitation. Whether Rosales needed further medical treatment for his work injuries was set out in the settlement as a dispute. The Board mentioned the possible need for future medical treatment in making its best interests determination: the chair asked Rosales more than once about the waiver of future medical benefits. Rosales agreed that he wanted the Board to approve the settlement even though he was "closing [his] future medical treatment." The Board decided that the amount of the settlement and the permitted offset made it unlikely Rosales would receive future medical payments and approved the settlement.

We agree with the Commission that the missing medical records in this case were not so critical to the Board's best-interest analysis that their absence required the Board to set aside the agreement, so we affirm the Commission's decision about the missing records.

**D.      The Commission Correctly Concluded That Substantial Evidence Supported The Board's Findings Regarding Misrepresentation And Duress.**

Rosales's misrepresentation claim is related to the medical records issue: he alleges that Icicle committed fraud by saying in the settlement that "[a]ll medical reports in the possession of the employer are attached and incorporated into this Agreement" when Icicle did not submit all medical records with the agreement.

The Commission correctly decided that substantial evidence supported the Board's decision. To analyze Rosales's argument the Commission and Board used the misrepresentation standard from *Seybert v. Cominco Alaska Exploration*:

---

[31]      8 AAC 45.160(e).

"the party seeking to avoid the contract must show (1) a misrepresentation; (2) which was fraudulent or material; (3) which induced the party to enter the contract; (4) upon which the party was justified in relying."[32] Rosales never explained how the statements about medical records induced him to enter into the settlement, so a misrepresentation claim using this standard must fail as a matter of law.

Rosales's misrepresentation allegation appears to be akin to fraud on the tribunal rather than "regular" fraud: he claims that Icicle misrepresented *to the Board* that Icicle did not have medical records in its possession when in fact it did have them.[33] Even if Rosales had proved all of his allegations, the fraud he alleges would not meet the standard for fraud on a tribunal.[34] Furthermore, all of the allegedly omitted records were available to Rosales or his attorney, who had an independent obligation to submit them to the Board.[35]

Rosales also argues that the Commission incorrectly decided that substantial evidence supported the Board's decision that the settlement should not be set aside because of duress. Rosales contends that Icicle's letter following the first Board hearing, demanding either a return of the money paid after execution of the documents or an affirmative statement from Rosales that he wanted the Board to approve the settlement,

---

[32] 182 P.3d 1079, 1094 (Alaska 2008) (citing *Bering Straits Native Corp. v. Birklid*, 739 P.2d 767, 768 (Alaska 1987)).

[33] *See Blanas v. Brower Co.*, 938 P.2d 1056, 1062-64 (Alaska 1997) (discussing the difference between fraud on the court and "regular" fraud under Alaska Civil Rule 60(b)).

[34] *See, e.g.*, *Vill. of Chefornak v. Hooper Bay Constr. Co.*, 758 P.2d 1266, 1271 (Alaska 1988) ("To constitute fraud on the court . . . conduct must be so egregious that it involves a corruption of the judicial process." (citing *Stone v. Stone*, 647 P.2d 582, 586 n.7 (Alaska 1982); *Allen v. Bussell*, 558 P.2d 496, 500 (Alaska 1976))).

[35] 8 AAC 45.052(d).

"threatened [him] to say and do something against his will." Icicle responds that it was "perfectly reasonable" to ask about Rosales's intentions and to ask for return of the money if Rosales did not want to go through with the Board settlement. We see nothing improper in Icicle's letter. The letter merely requested return of the consideration Icicle had paid or an assurance that Rosales would perform as he agreed to in the contract.

The Board found that Rosales's assertion that he felt pressured was not credible; it also determined that the fact the letter was sent to his attorney rather than directly to him attenuated any possible coercion. The Commission decided that the Board's findings were supported by substantial evidence.

The Board did not set out the legal standard it used to evaluate Rosales's duress claim, but the Commission used the standard we have adopted in contract cases: "a party alleging duress must show that (1) he involuntarily accepted the terms offered by another party; (2) the circumstances permitted no alternative course of action; and (3) such circumstances were the result of the coercive acts of the other party."[36] In its brief before this court, Icicle uses a definition of "duress" from Black's Law Dictionary, which defines "duress" in part as: "2. Broadly, . . . a threat of harm, used to compel a person to do something against his or her will or judgment . . . ."[37]

No matter what legal standard is used, Rosales's duress claim is undercut by the Board's finding that he was "not credible in his assertions he was not properly informed about the settlement or the benefits he was waiving, and he felt coerced or under duress when he testified to the board he wanted the workers' compensation settlement approved." The Board has the sole power to determine the credibility of a witness, and

---

[36]     *See Seybert*, 182 P.3d at 1096 (citing *Helstrom v. N. Slope Borough*, 797 P.2d 1192, 1197 (Alaska 1990)).

[37]     BLACK'S LAW DICTIONARY 529 (9th ed. 2009).

its credibility findings are binding on the Commission.[38] Because of the credibility finding, Rosales could not show that he accepted the terms of the agreement involuntarily, nor could he show that he was compelled to do something against his will.

Because the Commission correctly determined that substantial evidence supported the Board's findings about duress and misrepresentation, we affirm the Commission's decision on these issues.

### E. The Board Made Adequate Findings And Adequately Considered The Evidence.

Rosales maintains that the Board made inadequate findings and failed to consider all of the evidence. Rosales argues that the Board did not (or could not) consider all of his medical records when it decided to approve the settlement as being in his best interests.

In any event, Rosales and his attorney had the means to submit copies of any medical records or depositions they deemed relevant to the Board's best interests determination before the hearings about approving the settlement. All of the medical records Rosales mentions, with the possible exception of the foot-surgery records, were in the possession of his attorney before the Board hearings on the settlement. Additionally, as the Board observed in its decision about setting the agreement aside, Rosales testified under oath that he thought the agreement was in his best interests and that he understood he was waiving future medical benefits. The Board's questions about Rosales's medical treatment and retraining plans indicate that it considered the evidence and made adequate findings about his best interests.

### F. Hearing Officer Conduct

In his appeal to the Commission, Rosales raised for the first time a question of hearing officer bias. He contended that the Board chairperson should have been

---

[38] AS 23.30.122, .128(b).

disqualified because she had represented Seabright Insurance Company, a party in this case, within two years prior to the Board hearing.[39] The Commission said in a footnote that the argument had "no merit" and was not adequately briefed.

Rosales relies on AS 22.20.020(a)(5), which provides that "[a] judicial officer may not act in a matter in which . . . a party . . . has retained or been professionally counseled by the judicial officer as its attorney within two years preceding the assignment . . . ." But this statute does not apply to the Workers' Compensation Board — it applies only to judges, not to administrative hearing officers.[40]

Alaska Statute 44.64.050 is the statute that governs the conduct of administrative law judges and hearing officers.[41] Rosales cites a regulation adopted under this statute that provides in part: "A conflict of interest exists if . . . a hearing officer or administrative law judge previously represented or provided legal advice to a party on a specific subject before the hearing officer or administrative law judge."[42] This regulation does not define the term, "specific subject," but a separate provision states that the "[c]ommentary on and decisions applying the Alaska Code of Judicial Conduct may be used as guidance" in interpreting the code of hearing officer conduct.[43]

---

[39]     In his brief before the Commission and in this court, Rosales cited published Board decisions indicating that the Board chairperson had previously represented Seabright Insurance Company in a workers' compensation case.

[40]     *See* AS 22.20.020 (defining "judicial officer" as a supreme court justice, a court of appeals judge, a superior or district court judge, or a magistrate).

[41]     AS 44.64.050(b); 2 AAC 64.010 (2012). 2 AAC 64.010–.090 is the code of hearing officer conduct.

[42]     2 AAC 64.040(a)(2).

[43]     2 AAC 64.030(c).

Under the Code of Judicial Conduct, a judge must disqualify himself or herself in a proceeding where "the judge served as a lawyer in the matter in controversy . . . ."[44] Thus, a judge is generally disqualified only when the judge previously represented one of the parties in the same case or a substantially related matter.[45] Under this rule, "unless there is a specific showing of bias, a judge is not disqualified merely because he or she worked as a lawyer for or against a party in a previous, unrelated matter."[46] We interpret the regulation under consideration in the same manner: A hearing officer is generally not disqualified simply because he or she has previously represented one of the parties on an unrelated matter.

In this case, there was no evidence that the Board chairperson had previously represented Seabright in connection with Rosales's workers' compensation claim or any related matter. Her previous representation of Seabright, therefore, did not involve the same "specific subject" as the current litigation. We conclude that the chairperson did not have a disqualifying conflict of interest.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the Commission's decision.

---

[44] Alaska Code of Judicial Conduct Canon 3(E)(1)(b).

[45] *See Mustafoski v. State*, 867 P.2d 824, 832 (Alaska App. 1994); *see generally* RICHARD E. FLAMM, JUDICIAL DISQUALIFICATION: RECUSAL AND DISQUALIFICATION OF JUDGES, § 11.1 at 283-85 (2d ed. 2007).

[46] *Mustafoski*, 867 P.2d at 832; *see generally* FLAMM, § 11.2 at 286-88.